JOSEPH F. BRENNAN et al., Plaintiffs, *v.* COMMUNITY SERVICE SOCIETY OF NEW YORK et al., Defendants.

City Court of New York, New York County, May 11, 1943.

*Irving Burger* for plaintiffs.

*Robert H. Mulreany* for Community Service Society of New York, defendant.

*George A. Dickinson* for Carstens, Linnekin & Wilson, Inc., defendant.

SCHIMMEL, J.   Motion directed to the answer of defendant Community Service Society of New York is determined as follows: The second and third separate defenses, consisting of paragraphs 9 and 10, will be allowed to stand.   I do not decide, because it is unnecessary to do so now, whether a settlement, for a lesser sum, of moneys due under the Fair Labor Standards Act of 1938 (U. S. Code, tit. 29, § 201 *et seq.*) would be valid.   Certainly in the absence of a genuine dispute it should not be held valid, because unless there is such a dispute there can be no accord and satisfaction.   It has been held by some courts that the policy of the statute requires payment in full of overtime wages, and that an agreement between employer and employee for " the payment of a lesser

sum in satisfaction of the amount made due by law " is not legally effective. Other courts have taken the position that an accord and satisfaction might be valid if there was a genuine dispute as to the number of hours the employee actually worked. (See *Rubin* v. *Meadow Provision Co., Inc.*, 39 N. Y. S. 2d 517; *Same* v. *Same*, 39 N. Y. S. 2d 518; *Asaro* v. *Lillienfeld*, 36 N. Y. S. 2d 802; *Rigopoulos* v. *Kervan*, 47 F. Supp. 576 ; *Bailey* v. *Karolyna Company, Ltd.*, 50 F. Supp. 142.) However, whether the releases or receipts given here extinguished plaintiffs' claims cannot be determined from the pleadings alone. Each release recites that it was given " as payment in full for all wages due the undersigned under the provisions of the Fair Labor Standards Act for work performed at the premises 361 Broadway, New York City, between February 3, 1941 and March 1, 1942." Whether the sums received represented full payment remains to be seen at the trial. It is possible that payment in full was made for all overtime work; at least, defendants are entitled to prove this, if they can. In any event, the defenses will be good as partial defenses to the extent of the sums actually paid. They should not, therefore, be stricken out at this time. Furthermore, even if defendants could prove under a general denial that which they have pleaded affirmatively, the so-called defenses need not be stricken out. (Cf. *Home Ins. Co.* v. *Gillespie Loading Co.*, 222 App. Div. 67.) However, it is not to be understood that this court approves defendants' contention that an agreement by an employee releasing his employer in consideration of a lesser sum than that due under the provisions of the statute is to be given effect. The fact that these defenses are allowed to stand at this time is not to be construed as constituting an approval of that contention.

The fourth separate defense and counterclaim, consisting of paragraphs 11 to 20, inclusive, is stricken out. The allegations contained in those paragraphs indicate neither a valid defense nor a counterclaim. Indeed, there is no defense here of which a court having no equitable jurisdiction could take cognizance, because the affirmative remedy of reformation must be applied if defendants are to prevail, and reformation cannot be effectuated by indirection, by the device of sustaining a so-called " equitable defense ", which is not really a defense at all but a statement of facts calling for affirmative relief. Actually, there is no ground for reformation; what defendants are trying to do is not to supply something which by mistake

or inadvertence was omitted from the contract or to remove something from the contract which was included by inadvertence or mistake. Rather, defendants are attempting to annul the provisions of the Fair Labor Standards Act, insofar as their contract is concerned; at least, they are trying to render the Act inapplicable to their contract. Defendants' contentions simply come down to this: If they had thought of the statute at all, or if they had supposed it might be applicable to them, they would have drawn a different sort of contract. That is no ground for reformation. (Cf. *Bailey* v. *Karolyna Company, Ltd.*, 50 F. Supp. 142, *supra*, and cases there discussed; *Bell* v. *Ames, Conehan & Newman, Inc.*, 179 Misc. 1059.)

The counterclaims contained in paragraphs 21 to 28, inclusive, are allowed to stand; what has been said of the second and third separate defenses is applicable also to these alleged counterclaims. Any conclusions of law pleaded in said paragraphs 21 to 28, inclusive, and in the second and third separate defenses, may be treated as surplusage and disregarded on this motion.

The following disposition is made of the motion directed to the answer of defendant Carstens, Linnekin & Wilson, Inc.: The first, second, third and fourth separate defenses, consisting of paragraphs 15 to 22, inclusive, are stricken out. Insofar as these defenses purport to set forth conclusions of law, they may be disregarded. Conclusions of law need not be pleaded. Insofar as any question of constitutionality is sought thereby to be raised, said defenses are invalid. There is no question of constitutionality in the case, at least none is revealed in the pleadings. The constitutionality of the Fair Labor Standards Act itself has been determined and should not be discussed at this time before this court. Whether this defendant is an employer within the definition supplied in the Fair Labor Standards Act is a question of fact, and plaintiffs must affirmatively prove that said defendant is such an employer. In striking out these defenses, which are certainly unnecessary and also invalid and which would confuse the issues if allowed to stand, especially as divers incorrect conclusions of law are stated, I make no ruling in regard to whether this defendant is an employer within the scope of the Act. No separate defense need concern itself with that point, for it relates to something which plaintiffs must both plead and prove.

The fifth separate defense and counterclaim, consisting of paragraphs 23 to 32, inclusive, is stricken out for the same reasons that the fourth separate defense and counterclaim

has been stricken from the answer of defendant Community Service Society.

The sixth separate defense and counterclaim and the seventh separate defense and counterclaim will be allowed to stand, but what was said above in relation to the second and third separate defenses and the counterclaims contained in paragraphs 25 to 28, inclusive, of the answer of defendant Community Service Society is applicable here as well.

(On Reargument, June 22, 1943.)

Motion for reargument made by defendant Carstens, Linnekin & Wilson, Inc., is granted. Upon reargument the original determination is adhered to.

As to the second and third separate defenses: This defendant, a real estate agent, was in charge of the building at which plaintiffs were employed as elevator operators, managing it for the owner, the codefendant. Its powers as agent were limited, but it is not necessary, in connection with the present application, to discuss those limitations. The agreement of agency between the owner and defendant Carstens, Linnekin & Wilson, Inc., shows that the latter was " to attend to  *  *  * the employment of help." Plaintiffs allege that they were employed by defendant Carstens, Linnekin & Wilson, Inc., and also by the defendant owner. When these defenses were originally stricken, it was said in this connection: " Whether this defendant is an employer within the definition supplied in the Fair Labor Standards Act is a question of fact, and plaintiffs must affirmatively prove that said defendant is such an employer. * * * I make no ruling in regard to whether this defendant is an employer within the scope of the Act. No separate defense need concern itself with that point, for it relates to something which plaintiffs must both plead and prove." This was said with the following definition, somewhat difficult of application, in mind: " ' Employer ' includes any person acting directly or indirectly in the interest of an employer in relation to an employee  *  *  * " (Fair Labor Standards Act of 1938; U. S. Code, tit. 29, § 203). It is incumbent upon the plaintiffs to prove that this defendant was their " employer " within that definition and no affirmative plea by defendant is necessary in this connection. It is well to strike out the defenses because proponent has made them the basis for introduction into the case of certain rules of the common law which are not pertinent. It argues that " an agent for a disclosed principal cannot be held liable for the principal's

obligations." Of course, this is good law, but not applicable here. The Congress has, for reasons of public policy, extended liability under the Act to " any person acting directly or indirectly in the interest of an employer in relation to an employee "; such liability does not hinge upon a failure to disclose the identity of the principal employer. It is not now determined whether, after evidence has been taken, defendant Carstens, Linnekin & Wilson, Inc., will turn out to be an " employer " within the statutory definition. As above indicated, plaintiffs have the burden of proving that this defendant was their employer within the scope of that definition, and the defendant is in no way hurt by the elimination of the affirmative defenses.

In relation to the fourth defense, it is contended by defendant Carstens, Linnekin & Wilson, Inc., that although the Fair Labor Standards Act has been held constitutional " in its general application to the rights of certain maintenance employees in loft buildings where the tenants are engaged in commerce or in the production of goods for commerce," it is nevertheless open to question " whether that same Act would be constitutional if applied to agents who manage such properties." However, the activities of the employer determine only indirectly the application of the Act, which is concerned primarily with the activities of employees. The Act applies only to employees engaged in the production of goods for commerce or in activities belonging to commerce. (*Kirschbaum Co.* v. *Walling,* 316 U. S. 517, 524; *Stoike* v. *First Nat. Bank,* 290 N. Y. 195.) Power to regulate the compensation of such employees includes in general the power to impose liability for violations of regulatory statutes upon aids or agents of the employer, if in the judgment of the law-making power this serves to facilitate enforcement. There may, of course, be cases in which the relationship to the employment of a person thus sought to be made liable is so distant that the Federal power over commerce will not reach him, but this is hardly true of a real estate management concern which, as agent of the owner, manages a building, hiring, discharging and supervising employees whose duties are of such nature that they are engaged in commerce or in the production of goods for commerce. It is not believed that there is here any question of constitutionality. However, if the evidence at the trial should disclose that this defendant's connection with the employment of plaintiffs was more remote than the pleadings indicate, defendant will, of course, be free to litigate any con-

stitutional question opened by the evidence and elimination of the fourth affirmative defense will not preclude it from doing this.

In the fifth defense and counterclaim it is pleaded that an agreement, known as the Sloan agreement, had been made between defendants and a union of which plaintiffs were members, which provided that the employees therein specified, including plaintiffs, " were to receive the sums set forth in said agreement as full compensation for the work performed by them during the hours set forth in said agreement " (paragraph 25, this defendant's answer). Defendant contends in effect that if the parties had considered the Fair Labor Standards Act of 1938 to be applicable to building service or maintenance employees, they would have caused the agreement to be so drawn as to indicate " hourly compensation ", which hourly compensation would have been made low enough so that the employees, although working the precise number of hours provided in the agreement, and being paid time and a half for hours in excess of the maximum allowed under the Fair Labor Standards Act, would nevertheless receive the exact aggregate weekly pay stipulated in the agreement. Of course, the parties did not know when the Sloan agreement was drawn that the Fair Labor Standards Act would be held applicable to building service or maintenance employees, for *Kirschbaum Co.* v. *Walling (supra)* had not then been decided. Apparently they gave no thought to the Act. But their failure to consider the possible application of the Act does not constitute a mistake either of fact or of law and is no ground for reformation. The court adheres to what was said in the original opinion: " Actually, there is no ground for reformation; what defendants are trying to do is not to supply something which by mistake or inadvertence was omitted from the contract or to remove something from the contract which was included by inadvertence or mistake. Rather, defendants are attempting to annul the provisions of the Fair Labor Standards Act, insofar as their contract is concerned; at least, they are trying to render the Act inapplicable to their contract. Defendants' contentions simply come down to this: If they had thought of the statute at all, or if they had supposed it might be applicable to them, they would have drawn a different sort of contract." It is not believed that the defendants are in a different position than any other employer who, disregarding the statute and the duty which it imposes to pay for overtime hours at one and one-half

times the regular rate, has agreed with his employee upon a weekly rate of compensation for a work week containing hours exceeding those which the Act prescribes (U. S. Code, tit. 29, § 207). The fact that the Sloan agreement is an extremely formal document, embodying an arrangement concluded after many difficulties between the union and the real estate owners of the city of New York had been adjusted, and after arbitrators had been called in to help, does not, in principle, make any difference. It is recognized that there is a diversity of opinion regarding this question, which has been variously decided by different courts.

It should also be noted that even if defendant is correct in contending that the Sloan agreement, which definitely does not provide for an hourly wage, may properly be reformed, nevertheless no such relief may be accorded in this court, for reformation is an affirmative remedy to be sought only in a court having general equitable jurisdiction. Unless reformed by a court of equity, the agreement must be read as it was written, for parol evidence of an intention not in accordance with its express provisions cannot be accepted in a court of law. I cannot agree with defendant's suggestion that its alleged right to reform the contract might also be asserted as an equitable defense.

The motion for reargument made by the defendant Community Service Society of New York is also granted, and the original determination is adhered to.

What has been said in relation to the fifth defense and counterclaim of defendant Carstens, Linnekin & Wilson, Inc., is applicable to the fourth separate defense of the Community Service Society.