RONALD MARC ROBERTS v. WAKE FOREST UNIVERSITY, EUGENE GAYLOR HOOKS AND JESSE HADDOCK

No. 8121SC270

(Filed 19 January 1982)

1. **Master and Servant § 10— discharge of college golf coach—no breach of contract**

    Plaintiff's discharge as golf coach at Wake Forest University, with or without cause, 16 months after he was orally hired for that position did not constitute a breach of contract, even though plaintiff had become a "permanent" employee under regulations of the University, where the duration of the contract was not specifically fixed; the circumstances did not reveal an intention of the parties that the contract of employment be for a long time or for a reasonable time of not less than six years as contended by plaintiff; and the evidence did not show a custom or usage known to both parties at the time of employment so as to indicate or imply a specific term of employment.

2. **Judgments § 37.4; Master and Servant §§ 10.2, 100— unemployment compensation ruling—no res judicata in action for breach of employment contract**

    The ruling of the Employment Security Commission that plaintiff was entitled to unemployment compensation benefits upon his discharge as golf coach at Wake Forest University was not *res judicata* in plaintiff's action for breach of his contract of employment since (1) the issues before the Commission and the court in the breach of contract action were not the same, and (2) the doctrine of *res judicata* was inapplicable to an adjudication by an unemployment compensation agency.

APPEAL by plaintiff from *Collier, Judge.* Order entered 29 September 1980 in Superior Court, FORSYTH County. Heard in the Court of Appeals 20 October 1981.

Plaintiff sought to recover damages for breach of an oral employment contract as Golf Coach and Associate Athletic Director made in July 1976 with Wake Forest University by its agents Eugene Hooks, Athletic Director, and James R. Scales, President. Plaintiff alleged that although the duration of the contract was not fixed, the parties intended the employment to be for a reasonable time, at least six years, but that his contract as golf coach was terminated and the University hired Jesse Haddock as golf coach on 2 December 1977 without notice to plaintiff.

Plaintiff also alleged a claim against Haddock and Hooks for interference and inducement to breach his contract.

Defendants Hooks and the University in their answers admitted plaintiff's employment as Associate Athletic Director and Golf Coach but denied that there was any agreement as to the term of employment. They also admitted defendant was offered, but refused to accept, new duties, unrelated to coaching golf, as Associate Athletic Director. They further alleged that plaintiff failed to adequately perform the duties of golf coach, that he demanded the members of the golf team sign written pledges of support to him personally, that he created ill feelings between himself and members of the team, that he failed to attend tournaments in which the golf team participated, that he wrongfully accused the defendants of misconduct, and that he had not worked out as an acceptable coach.

Defendant Haddock by his answer made a general denial. Plaintiff later took a voluntary dismissal of his claim against Haddock.

Plaintiff moved for partial summary judgment on the issue of liability. Defendants moved for summary judgment. The trial court in ruling on these motions had before it for consideration the University's answer to interrogatories, depositions of plaintiff, President Scales and Athletic Director Hooks, letters and telegrams exchanged between plaintiff and Director Hooks, the University's "Personnel Policies and Regulations," Hooks' Evaluation of Plaintiff, and Minutes of Athletic Council. We summarize

briefly the materials offered by plaintiff and by defendant University and defendant Hooks.

### PLAINTIFF'S MATERIALS

Jesse Haddock, after 17 years as golf coach at the University, left for Oral Roberts University in July 1976. His leaving the University caused somewhat of an uproar, the members of the golf team were upset and resentful, and there was criticism of the move by alumni, particularly the golf team alumni.

Plaintiff had been golf coach at Georgia Southern University. In July 1976, he read that Haddock had resigned and then made a written application to Athletic Director Hooks. Hooks requested plaintiff come for an interview in early August 1976. Plaintiff told Hooks golf coaching was not a full-time endeavor. Hooks said he wanted someone to coach golf and to help with the public relations activities. Plaintiff also talked with President Scales. He told Scales that he hoped to win 13 national championships. Scales replied that was a worthy ambition and he hoped plaintiff achieved it. Hooks said he did not want somebody who would "run in and out." Plaintiff listed his requirements as follows: salary of $20,800, payment of his country club dues, a courtesy car, moving expenses, and the title of Associate Athletic Director. No precise time period was specified.

Golf coaches traditionally have a very long tenure. Plaintiff understood from all the circumstances surrounding his visit that he would be given a reasonable amount of time to demonstrate he could coach the golf team.

In July 1977 Hooks wrote a letter to plaintiff in which he complained that the team was not making a good effort and showed a complete lack of respect for plaintiff and the school, that there would be mounting pressure from the team and from alumni to rehire Haddock, and that it would be best for all concerned if plaintiff resigned. He refused.

On 21 July 1977 the Athletic Council voted to retain plaintiff as golf coach.

The golf team did not do well in the Fall of 1977. By letter of 2 December 1977 President Scales requested plaintiff to relinquish his duties as golf coach and accept other duties in the

athletic program. He refused and his employment was terminated. Haddock was rehired as golf coach in December 1977.

Plaintiff filed a claim for unemployment compensation. The Commission ruled that he was entitled to benefits.

### DEFENDANTS' MATERIALS

Coach Haddock was offered a lucrative salary at another school, a salary which Wake Forest University could not match, and he resigned to accept that job.

Plaintiff was the only applicant interviewed by Hooks and President Scales. The golf program at the University was discussed. There was an oral agreement on salary and that plaintiff would have the title of Golf Coach and Associate Athletic Director. He did not request a definite term of employment.

Coach Roberts inherited a very talented golf team, some All-Americans and two of the top recruits in the country. Some of the team members did not like him and did not respect him.

In the Fall of 1976 plaintiff placed on the bulletin board a request that all members of the team sign a pledge of loyalty to plaintiff and the University. When informed that newspaper reporters were coming to photograph the pledge sheet, Hooks requested plaintiff to remove it.

In the Spring of 1977 the team placed third in the ACC and third in the Big Four Tournaments. Several golfers on the team left school; others on the team were critical of plaintiff. Lanny Wadkins told Hooks he would no longer support the program. The alumni were critical of the golf program.

The golf program deteriorated. The team members became undisciplined and were criticized for their sloppy attire. There were many instances of misconduct during tournament play. After one tournament plaintiff threw a trophy at Scott Hoch and cursed him. Five players quit the team.

In a letter to plaintiff dated 7 July 1977 Hooks suggested that plaintiff resign.

In the last tournament of Fall 1977 the team finished eleventh out of sixteen teams.

On 2 December 1977 President Scales announced that Jesse Haddock was rehired as golf coach and notified plaintiff that he was relieved of his duties as golf coach and would be reassigned to new duties in the athletic program. Plaintiff refused the reassignment. His employment was terminated by President Scales on 7 December 1977.

The trial court denied plaintiff's motion for partial summary judgment and allowed the motions for summary judgment by defendant Hooks and defendant University. Plaintiff appeals from the summary judgment for defendant University.

*Roy G. Hall, Jr., for plaintiff appellant.*

*Womble, Carlyle, Sandridge & Rice by Jimmy H. Barnhill and Joseph T. Carruthers for defendant appellee.*

CLARK, Judge.

It is a settled rule of law in North Carolina and other jurisdictions that employment for an indefinite term is regarded as an employment at will which may be terminated at any time by either party. *Still v. Lance,* 279 N.C. 254, 182 S.E. 2d 403 (1971); *Tuttle v. Lumber Co.,* 263 N.C. 216, 139 S.E. 2d 249 (1964); *Freeman v. Hardee's Food Systems,* 3 N.C. App. 435, 165 S.E. 2d 39 (1969); 9 Williston on Contracts § 1017 (3d ed. 1967); 3A Corbin Contracts § 684 (1960); Annot., 62 A.L.R. 3d 271 (1975); and see cases collected in Annot., 161 A.L.R. 706 (1946); Annot., 100 A.L.R. 834 (1936), and, Annot., 11 A.L.R. 469 (1921).

[1] In our opinion the questions on appeal are determined by whether this rule of law controls the case *sub judice.* First, though the materials offered by the defendant University to support its motion for summary judgment tend to show his performance as Golf Coach was not satisfactory, the materials offered by plaintiff are conflicting. Whether there was cause for termination as Golf Coach would be a material issue of fact, and we eliminate this issue in determining whether the trial court erred in allowing summary judgment. Second, though plaintiff was employed as Golf Coach and Associate Athletic Director, the record on appeal contains little or nothing relative to any duties expected or performed as Associate Athletic Director. It is unquestioned that defendant offered to retain plaintiff in the position of Associate

Athletic Director and assign him to perform other duties in the athletic program, but plaintiff took the position that he was employed as Golf Coach and rejected the offer. In determining the question before us, we make the assumption that plaintiff was employed as Golf Coach and defendant discharged him from this position.

Perhaps because of the sometimes harsh results, the courts have occasionally relaxed the general rule permitting either party to an employment contract for an indefinite term to terminate it at will, with or without cause. See Annot., 62 A.L.R. 3d 271 (1975); 53 Am. Jur. 2d *Master & Servant* § 27 (1970). In *Still v. Lance, supra,* although the court upheld the school board's termination of a teacher without cause, we find the following dicta: "Where, however, there is a business usage, or other circumstance, appearing on the record, or of which the court may take judicial notice, which shows that, at the time the parties contracted, they intended the employment to continue through a fixed term, the contract cannot be terminated at an earlier period except for cause or by mutual consent." *Id.* at 259, 182 S.E. 2d at 406-407.

Plaintiff, relying on this dicta, makes the argument that the attendant circumstances reveal the intention of the parties that the contract of employment be for a long time, or for a reasonable term, not less than six years. He relies on statements made by Athletic Director Hooks and President Scales when he was hired which indicated that they expected him to be with the University and develop the golf program for a substantial period. Plaintiff also claims it was the custom and usage for golf coaches to serve for long terms, that Jesse Haddock was the golf coach at the University for 17 years, and that according to records kept by the Golf Coaches Association, other coaches held their jobs for long terms. We find, however, that this evidence at best reveals the hope by the parties that plaintiff would perform his duties satisfactorily and maintain a good golf program but falls far short of showing the intention of the parties for a fixed term of employment. Nor does the statement of Dr. Scales that "employees are not customarily dismissed at random without reason," show a custom or usage known to both parties at the time of employment so as to infer or indicate a specific term.

Plaintiff relies on a manual entitled "Wake Forest University Personnel Policies and Regulations" to support his argument that

he was a "permanent" employee and could not be dismissed without cause. The manual included the following provision: "As a new employee, you serve a probationary period of three months to allow for job adjustment. At the end of this time if your performance has been satisfactory, you become a permanent employee. You then become eligible to participate in the University insurance program and you receive an employee identification card."

We assume that the manual applies to all employees of the University, including the Golf Coach and Associate Athletic Director, and that plaintiff, having served in that position for 16 months, was a "permanent" employee at the time of his termination. Dr. Scales testified that the distinction between probationary and permanent employees under the manual was that permanent employees become eligible for insurance and receive an identification card. But assuming that plaintiff was a "permanent" employee in a general sense, it is settled in North Carolina that "permanent" employment means a position of some permanence as contrasted with a temporary employment, and ordinarily, where there is no additional expression as to duration, a contract for permanent employment implies an indefinite general hiring terminable at will. *Howell v. Credit Corp.*, 238 N.C. 442, 78 S.E. 2d 146 (1953); *Malever v. Jewelry Co.*, 223 N.C. 148, 25 S.E. 2d 436 (1943); *Freeman v. Hardee's Food Systems, supra.*

[2] Plaintiff also makes the argument that the ruling of the Employment Security Commission that plaintiff was entitled to unemployment benefits is *res judicata* in this action, because an employee is disqualified for benefits if he (1) left work voluntarily without good cause attributable to the employer, or if he (2) was discharged for misconduct connected with his work. G.S. 96-14(1) and 96-14(2).

We find no merit in this argument because the issue before the Commission and the issue before the court in this action for breach of contract are not the same. Too, the doctrine of *res judicata* is inapplicable to adjudication by unemployment compensation agencies. 76 Am. Jur. 2d Unemployment Compensation § 93 (1975).

In conclusion, we find that plaintiff's discharge as Golf Coach, with or without cause, did not constitute a breach of contract, and summary judgment for the defendant is

Affirmed.

Judges HEDRICK and MARTIN (Harry C.) concur.