**William P. HOUSE, Plaintiff,**

v.

**CANNON MILLS COMPANY; Tracy E. Tindal, Senior Vice President; and Lynne Scarboro, Defendants.**

Civ. No. C–86–28–S.

United States District Court,
M.D. North Carolina,
Salisbury Division.

Feb. 23, 1988.

Carole Carlton Brooke, China Grove, N.C., for plaintiff.

M. Ann Anderson, Charles F. Vance, Jr., Winston–Salem, N.C., Lovic A. Brooks, III, Columbia, S.C., Elizabeth F. Reveley, Atlanta, Ga., for defendants.

## MEMORANDUM OPINION

BULLOCK, District Judge.

This matter is before the court on motion of Defendants Tindal and Scarboro for dismissal of the claims against them. In addition Defendant Cannon Mills moves for summary judgment on Plaintiff's state law claim that Cannon Mills breached his employment contract. The facts of this case remain as set out in this court's memorandum opinion of June 25, 1986, except that Tindal and Scarboro are no longer employed by Cannon Mills.

### Motion to Dismiss the Individual Defendants

In making their motion to dismiss, Tindal and Scarboro rely on the court's statement in the June 25, 1986, opinion that liability of individuals under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, is limited to injunctive relief. Since neither Defendant is presently employed by Cannon Mills, if that statement of the law is accurate such relief would be without effect. However, upon further consideration of the law under the ADEA, it appears that a plaintiff may obtain monetary relief against individual defendants. Therefore, the motion of Defendants Tindal and Scarboro will be denied.

As defined under both the ADEA, 29 U.S.C. § 630(b), and Title VII, 42 U.S.C. § 2000e(b), the term "employer" can include one acting as an agent of the "person" engaged in interstate commerce. The liability provisions of both acts therefore permit suits against individual supervisory employees who are deemed "employer[s]." (ADEA): *Wasilchuk v. Harvey's Wagon Wheel, Inc.*, 610 F.Supp. 206, 208 (D.Nev. 1985); *Barkley v. Carraux*, 533 F.Supp.

242, 245 (S.D.Tex.1982); *Goodman v. Bd. of Trustees of Community College Dist. 524,* 498 F.Supp. 1329, 1336 (N.D.Ill.1980); *Coffin v. South Carolina Dept. of Social Services,* 562 F.Supp. 579, 587 (D.S.C.1983); (Title VII): *Barger v. State of Kansas,* 630 F.Supp. 88, 89 (D.Kan.1985); *Padway v. Palches,* 665 F.2d 965, 968 (9th Cir.1982).

In Title VII actions the issue has been whether the individual defendants are personally liable for back pay, or subject only to injunctive relief. The Ninth Circuit has clearly stated that "[t]he individual defendants cannot be held liable for back pay." *Padway,* 665 F.2d at 968 (citing *Clanton v. Orleans Parrish School Bd.,* 649 F.2d 1084, 1099 [5th Cir. Unit A 1981] [public officials are not personally liable for back pay under Title VII]). *See also Pree v. Stone & Webster Engineering Corp.,* 607 F.Supp. 945, 950 (D.Nev.1985); *Seib v. Elko Motor Inn, Inc.,* 648 F.Supp. 272, 274 (D.Nev.1986).

On the other hand, without saying so explicitly, several district courts have acknowledged individual liability under Title VII. *See Dague v. Riverdale Athletic Ass'n,* 99 F.R.D. 325, 327 (N.D.Ga.1983) ("it is inconceivable that Congress could have intended to exclude from liability the very persons who have engaged in the employment practices which are the subject of the action."); *Goodman,* 498 F.Supp. at 1332 (if board of trustees is an employer and defendant is their agent then for litigation purposes he also is an employer and can be held accountable for any statutory violations); *Barger,* 630 F.Supp. at 89 (explicit language of Section 2000e[b] and the liability provision, Section 2000e–2[a][1] compels the conclusion that individual defendants may be liable under Title VII if they are agents of employer, but only in their official capacity).

Although the court believes the Ninth Circuit's position to be the better one, that does not resolve the issue here, because this case arises under the ADEA. While many provisions of the ADEA are similar to those of Title VII, the scope of relief is much broader. 29 U.S.C. § 626(b) allows the court to grant appropriate legal or equitable relief and provides liquidated damages for willful violations. In contrast, 42 U.S.C. § 2000e–5(g) permits reinstatement, back pay or other equitable relief. The availability of additional remedies, particularly one based on willfulness of conduct, argues against a construction of the ADEA that limits to injunctive relief the liability of the individual who acted willfully.

Another reason for not relying entirely on judicial interpretations of Title VII is that the ADEA incorporates the remedies and procedures of the Fair Labor Standards Act ("FLSA"), which differ from those under Title VII. *Fiedler v. Indianhead Truck Line, Inc.,* 670 F.2d 806, 810 (8th Cir.1982) (citing *Lorillard v. Pons,* 434 U.S. 575, 582, 98 S.Ct. 866, 871, 55 L.Ed.2d 40 [1978]); *see also Slatin v. Stanford Research Institute,* 590 F.2d 1292, 1294 (4th Cir.1979). The specific and selective incorporation of the FLSA enforcement provisions evidences a congressional intent to adopt the existing interpretations of FLSA provisions. *Slatin,* 590 F.2d at 1296.

At the time the ADEA was first passed there were few existing interpretations under the FLSA as to whether an individual was personally liable as an "employer." The Eighth Circuit had ruled that a defendant who was president and manager of a corporate employer was himself an "employer" under 29 U.S.C. § 203(d), and subjecting him to injunctive relief was not an abuse of discretion.[1] *Chambers Construc. Co. v. Mitchell,* 233 F.2d 717 (8th Cir.1956). Much earlier a New York state court had held a building manager liable for unpaid overtime wages and liquidated damages under the FLSA, despite the fact that the owner of the building was known. *Brennan v. Community Service Society of New York,* 45 N.Y.S.2d 825, 181 Misc. 637 (1943).

However, by 1978 when Congress substantially amended the ADEA, the rule under the FLSA was much clearer. In *Shultz v. Chalk–Fitzgerald Construc. Co.,*

---

1. The ADEA does not expressly incorporate Section 203(d); however, the definition of employ-er listed therein is comparable to the ADEA definition in 29 U.S.C. § 630(b).

309 F.Supp. 1255 (D.Mass.1970), the court held an individual liable under the FLSA despite the fact that he acted in a representative capacity as an officer and agent. The court said:

Congress has in effect provided that for the purposes of the Act any person who acts directly or indirectly in the interest of an employer in relation to an employee shall be subject to the same liability as the employer.... [L]iability is predicated not on the existence of the employer-employee relationship between him and the employee but on the acts he performs in relation to the employee.

309 F.Supp. at 1257. *See also Hodgson v. Royal Crown Bottling Co.*, 324 F.Supp. 342, 347 (D.Miss.1970), *aff'd*, 465 F.2d 473 (5th Cir.1972); *Brennan v. Whatley*, 432 F.Supp. 465, 469 (E.D.Tex.1977); *Usery v. Weiner Bros., Inc.*, 70 F.R.D. 615, 617 (D.Conn.1976).[2]

Most of these cases involved individual defendants who were officers exerting substantial managerial control over the corporation, and who possessed ownership interests. In contrast, Tindal and Scarboro were not high-ranking officers of, nor does the evidence indicate that they were substantial shareholders in, Cannon Mills. However, the court does not find this to be a sound basis for distinguishing the FLSA cases.

In the FLSA cases the courts did not predicate personal liability on defendant's identity with the corporation; they did not "pierce the corporate veil" in order to bypass standard principles of limited liability from interests in a corporation. Rather, the individuals were held accountable because an adverse employment action was taken in violation of the FLSA, which action was attributable to them due to their authority over employment decisions. The consideration of their position or ownership interest was only relevant to the question of their authority, *i.e.*, whether they were acting at their own discretion or only at the direction of a superior. In short, the import of the FLSA cases is that a position as an officer or shareholder is not a condition for liability, but merely an indicia of authority and status as an "employer" with respect to the violative action.

Liability under the ADEA is also predicated on status as an "employer." The issue of one's authority is included in this determination because for an individual to be an "employer" he must be an "agent" of the corporate employer. *See* 29 U.S.C. § 630(b). Title VII uses a nearly identical definition and under Title VII the term "agent" has been construed as including supervisory or managerial employees to whom some employment decisions have been delegated. *Barger*, 630 F.Supp. at 90 (citing *Owens v. Rush*, 636 F.2d 283, 287 [10th Cir.1980] [elected county sheriff is an agent for all matters within his discretion, including the hiring and firing of employees]). *See also York v. Tennessee Crushed Stone Ass'n*, 684 F.2d 360, 362 (6th Cir.1982).

■ In this case the evidence shows that Scarboro and perhaps Tindal had authority and discretion over Plaintiff's discharge for allegedly discriminatory reasons. With respect to that action they would be "agents" of Cannon Mills and would be "employers" within the express language of the statute. 29 U.S.C. § 623 makes discharge by an "employer" based on age a violation, for which 29 U.S.C. § 626(b) provides a remedy. Absent expression of congressional intent or authoritative precedent to the contrary,[3] the clear import of the statutory language, including the incorporation of

---

**2.** This position is still taken with regularity. *See Donovan v. Sabine Irrigation Co., Inc.*, 695 F.2d 190, 194–95 (5th Cir.), *cert. denied*, 463 U.S. 1207, 103 S.Ct. 3537, 77 L.Ed.2d 1387 (1983) (individual held liable for wages due despite lack of possessory interest in the corporate employer; individual remains "accountable for violations of the FLSA if he independently exercised control over the work situation."); *Donovan v. Agnew*, 712 F.2d 1509 (1st Cir.1983).

**3.** The issue of individual liability under the ADEA has usually arisen on a motion to dismiss. The question of the form and extent of liability is not directly confronted in these cases because the issue is inclusion within the class of "employers." *See, e.g., Goodman, Coffin.* Unlike this case, those cases do not involve individual defendants no longer with the defendant company, which renders injunctive relief against them meaningless.

the FLSA provisions and their accompanying case law, is imposition of personal liability on all "employers." Plaintiffs can pursue the prescribed remedies against them. This comports with both the purpose of the ADEA to eliminate discrimination from the workplace, *Coffin*, 562 F.Supp. at 589, and the statement of Justice Blackmun in *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 765, 99 S.Ct. 2066, 2076, 60 L.Ed.2d 609 (1979) (Blackmun, J., concurring), that the remedial provisions of the ADEA should be construed liberally.

Whether or not subjecting supervisors who use age as a factor in making employment decisions to personal liability is desirable, or was in fact consciously intended, that is the effect of the ADEA as passed.

### Breach of Contract

Defendants also seek summary judgment on Plaintiff's pendent North Carolina state law claim for breach of his employment contract. For the reasons stated in the memorandum opinion of June 25, 1986, the court exercises its discretionary jurisdiction over this claim.

House contends that he had an oral contract with Cannon Mills which provided for discharge only if his performance as Group Training Manager was unsatisfactory. House relies on statements made to him by Tracy Tindal that the company was committed to training, that the training position was very secure, that House was being brought in from outside because of his expertise in training, and especially Tindal's statement to the effect that: "If you join Cannon Mills you come here and do the job that I know you can do, you will have a long and prosperous career with Cannon Mills." Since performance was not the stated basis for his discharge, House claims that Cannon Mills breached the oral contract.

The general rule in North Carolina continues to be that employment contracts of indefinite duration are terminable at the will of either party, notwithstanding the quality of an employee's performance. *Still v. Lance*, 279 N.C. 254, 259, 182 S.E. 2d 403 (1971); *Harris v. Duke Power Co.*,

83 N.C.App. 195, 349 S.E.2d 394, 395 (1986), *aff'd*, 319 N.C. 627, 356 S.E.2d 357 (1987); *Roberts v. Wake Forest University*, 55 N.C.App. 430, 434, 286 S.E.2d 120, *disc. rev. denied*, 305 N.C. 586, 292 S.E.2d 571 (1982).

■ Without question the employment contract between House and Cannon Mills did not include a definite term. The North Carolina courts have consistently treated contracts based on promises of permanent, continuous and even lifetime employment as contracts for an indefinite duration, within the purview of the terminable-at-will rule. *See Still*, 279 N.C. at 259, 182 S.E.2d 403 ("a regular permanent job" is terminable notwithstanding quality of performance); *Tuttle v. Kernersville Lumber Co.*, 263 N.C. 216, 219, 139 S.E.2d 249 (1964) (same); *Malever v. Kay Jewelry Co.*, 223 N.C. 148, 149, 25 S.E.2d 436 (1943) ("permanent employment" means a steady rather than temporary job, but absent additional expression as to duration such job remains terminable at will); *see also Roberts*, 55 N.C.App. at 436, 286 S.E.2d 120; *Burkhimer v. Gealy*, 39 N.C.App. 450, 454, 250 S.E.2d 678, *disc. rev. denied*, 297 N.C. 298, 254 S.E.2d 918 (1979). The statements in most of the applicable North Carolina cases were substantially more definite than the representations made to House. Moreover, although in *Still* the state supreme court expressed a willingness to imply a fixed term when the circumstances or business usage indicate that the parties intended to do so, 279 N.C. at 259, 182 S.E.2d 403, the circumstances in this case do not suggest any intention to contract for a definite term. The fact that Cannon Mills hired House because of a lack of internal candidates with expertise in training does not mean that he was promised a job for a set period. Also, House himself asserts in his deposition only that he understood "long and prosperous" to mean more than the eight months he worked for Cannon Mills. In short, any contract House had was for an indefinite term.

■ The facts of this case also fail to bring House's contract within any exception to the terminable-at-will rule. The

North Carolina Supreme Court has acknowledged that where the employee provided some additional consideration over and above the ordinary exchange of services for wages a contract of employment for "as long as employee desires" or "as long as employee satisfactorily performs" may be excluded from the general rule. *Tuttle,* 263 N.C. at 219, 139 S.E.2d 249. Building on this language the North Carolina Court of Appeals stated that contracts which provide for permanent employment or employment for life might also be enforceable where special consideration is given. *Burkhimer,* 39 N.C.App. at 454, 250 S.E.2d 678.

The types of additional consideration recognized in *Burkhimer* included relinquishing a claim for personal injuries against the employer, changing one's residence in order to accept employment, and assisting in breaking a strike. *Id.* Since House and his wife gave up their jobs with Burlington Industries and moved from Erwin to Concord, North Carolina, he claims to fall within the second listed exception. This court does not read the North Carolina case law as establishing a general exception to the terminable-at-will rule in all cases which involve a relocation, however, not even when coupled with a job change.

In the earliest North Carolina Supreme Court case which supplied a relocation exception the promise made to the employee was substantially more definite than Tindal's statements to House. *Jones v. Carolina Power & Light Co.,* 206 N.C. 862, 175 S.E. 167 (1934) (employee moved from Spartanburg, South Carolina, to Asheville, North Carolina, to help break a strike in return for promise of "permanent employment for a term of at least ten years"). Conversely, the state supreme court refused to enforce a promise of "a permanent, steady place with [the employer]" despite the fact that the employee moved from Fayetteville, North Carolina, to Charlotte and took a pay cut in order to work for the defendant. *Malever,* 223 N.C. at 148, 25 S.E.2d 436. The court did not address the sufficiency of an intra-state move in general because it ruled that the language of the promise was insufficient. *Id.* at 149, 25 S.E.2d 436.

More recently, in *Sides v. Duke University,* 74 N.C.App. 331, 328 S.E.2d 818, *disc. rev. denied,* 314 N.C. 331, 333 S.E.2d 490 (1985), the state court of appeals upheld an employee's claims for breach of contract and wrongful discharge where she had moved from Michigan to accept a position as a nurse-anesthetist at Duke University Medical Center. Although House relies heavily on *Sides,* that decision is also distinguishable from the circumstances present here.

First, and most importantly, in *Sides* the employee had been accurately informed that the Medical Center's policy was to discharge nurse-anesthetists only for incompetence. The court also found that job security was a primary inducement for her decision. Her termination for refusing to testify falsely in a malpractice suit against the Medical Center directly contradicted the employer's express policy.

Second, although the court explicitly stated that the move from Michigan was sufficient additional consideration to remove her contract from the terminable-at-will rule, 74 N.C.App. at 345, 328 S.E.2d 818, a position since reiterated in *Harris,* 349 S.E.2d at 396, the opinion in *Sides* focused much more on the issues of policy raised by the case. The court took the opportunity to challenge application of the general rule where the termination presents an affront to public policy, and carved out an exception allowing an employee to bring an action in tort for wrongful discharge when she is fired for refusing to commit perjury. 74 N.C.App. at 342, 328 S.E.2d 818; *see also Guy v. Travenol Laboratories, Inc.,* 812 F.2d 911 913–14 (4th Cir.1987) (exceptions to at will rule may include changing one's residence as well as refusing to commit perjury but they are very narrowly construed.) The flagrant nature of the employment action in *Sides,* which also conflicted with an established and stated policy, dictated the result in that case.

In contrast, Tindal's statements were not, nor is there evidence that they were

meant to be, expressions of company policy, and House did not and could not reasonably have taken them that way. In this regard the court finds instructive the thoughtful and well-reasoned opinion of the federal court for the Western District of Pennsylvania in *Rupinsky v. Miller Brewing Co.*, 627 F.Supp. 1181 (W.D.Pa.1986) (applying North Carolina law). In *Rupinsky* the court undertook a thorough examination of the North Carolina cases and applied them to a situation factually similar to this one. There the employee had been told during the interviewing process that lay-offs were rare, and that if he did his job well he would be promoted. 627 F.Supp. at 1186. The interviewer also mentioned that since expansion was likely to continue for five or six years the employee probably need not worry during that time, and in any event there was a 90–day probationary period. *Id.* at 1186–87. The district court held that these representations, which were not reduced to writing, did not constitute "a specific oral agreement of a fixed duration of employment." *Id.* at 1187 (citing *Roberts*, 55 N.C.App. 430, 286 S.E.2d 120 [position as golf coach terminable at will despite statements about "a substantial period" and fact that golf coaches typically remained for long periods]; *Bennett v. Eastern Rebuilders, Inc.*, 52 N.C.App. 579, 279 S.E.2d 46 [1981] [employee had contract action where she had been promised she would be returned to former position if promotion did not work out, but no significant damages awarded because employer had right to terminate her at will from that former position]).

The representations in *Rupinsky*, insofar as they included mention of an approximate number of years and a probationary period, were more definite than the statements Tindal made to House. Moreover, House admits to believing that Tindal did not have authority to hire him. In fact, when Tindal later mentioned that the decision whether to hire House belonged to Scarboro, House asked Tindal not to interfere and said "I'd be a fool to accept a job with Cannon Mills if you interfered."[4] Nor had Tindal yet mentioned what position House would be considered for at the time he made the statements. Finally, Scarboro, who apparently had the authority to hire House, never made representations to him or ratified Tindal's statements; in fact there is no evidence that she knew those statements had ever been made. In light of these facts, this court finds no genuine issue regarding whether House understood the statements as promises or enforceable terms of his contract.

The contract claim also does not fall within any exception to the terminable-at-will rule, regardless of House's move and the job changes. The court in *Rupinsky* distinguished *Sides* from other cases involving inter-state relocations. The class of "additional consideration" is very small, and the reason the move from Michigan was sufficient in *Sides* was because she had been promised a single basis for termination and because the Medical Center's action "was unlawful and thus called into play the public policy exception." 627 F.Supp. at 1188. Because no public policy implications arose in *Rupinsky* the employee's move from Pittsburgh, Pennsylvania, to Eden, North Carolina, did not create a cause of action.

This court agrees with that reading of North Carolina law. Recognition of a general exception whenever relocation or a job change is involved would emasculate the terminable-at-will rule, because many if not most hirings involve either a job change or a change of residence or both. Although the terminable-at-will rule may be falling out of favor in other jurisdictions, its continued vitality in North Carolina is clear. *See Guy*, 812 F.2d at 912; *Harris*, 349 S.E.2d at 395.

House's discharge did not constitute a breach of an enforceable employment contract. To the extent this case implicates the policy against age discrimination, Plaintiff must rely on his ADEA claim.

---

**4.** Although the deposition evidence suggests that Tindal did not have authority over House's hiring, it is not clear whether he contributed to the decision to discharge House. Therefore, his dismissal from the ADEA claim is inappropriate at this time.

An order and judgment in accordance with this memorandum opinion shall be entered contemporaneously herewith.

### ORDER AND JUDGMENT

For the reasons expressed in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED AND ADJUDGED THAT the motion of all Defendants for summary judgment on the Plaintiff's pendent state law claim for breach of his employment contract is hereby GRANTED and that claim is hereby DISMISSED with prejudice.

IT IS FURTHER ORDERED that the motion of Defendants Tindal and Scarboro for dismissal from Plaintiff's ADEA claim is hereby DENIED.