**BOARD OF EDUCATION OF COVINGTON, Kentucky, a corporate entity, and Dr. Donald Hunter, Superintendent; Robert Hartman, Susan Hodge, Virginia Chapman, Ron Peace and Pamela Mullins, Appellants,**

v.

**William GRAY, Appellee.**

**No. 90–CA–436–MR.**

Court of Appeals of Kentucky.

April 5, 1991.

Robert L. Chenoweth, Frankfort, Donald
L. Richardson, Covington, for appellants.

Margo L. Grubbs, Florence, for appellee.

Before DYCHE, EMBERTON and
HAYES, JJ.

HAYES, Judge:

The Board of Education of Covington,
Kentucky, appeals the entry of partial sum-
mary judgment in favor of the appellee,
William Gray. The precise issue before
this Court can be succinctly stated: Can
the findings of fact entered in an unem-
ployment compensation hearing be used to
collaterally estop later relitigation of issues
in a subsequent civil suit? After considera-
tion of both relevant case law and practical
concerns, we conclude that such application
of estoppel is improper.

The facts of this case are straightfor-
ward. Appellant Gray was a teacher at
John G. Carlisle Elementary School in Cov-
ington. In April 1987, Gray was charged
with sexual abuse of several males in his
class. After a meeting with Covington
School Superintendent Dr. Donald Hunter,
Gray tendered his written resignation on
May 7, 1987. Accounts of the meeting
with Dr. Hunter differ significantly. Gray
alleged that Hunter forced him to resign by
threatening his teaching certificate; Hunt-
er asserted that he merely informed Gray
of the ramifications of being terminated,
and further explained to him his procedural
and substantive rights were that to occur.
In any event, after consultation with coun-
sel, Gray attempted to rescind his resigna-
tion on May 11, 1987. His request was
denied, and on May 14th, Gray's resigna-
tion was accepted by the full Covington
school board.

In August 1987, Gray filed for unemployment benefits. Initially, the hearing officer found that Gray had voluntarily resigned and was thus disqualified from receiving benefits. Gray appealed to the Kentucky Unemployment Insurance Commission ("commission"), which adopted the hearing officer's findings of fact, but disagreed with its conclusion of law, stating:

> The evidence in this case does not establish that claimant voluntarily tendered his resignation. To the contrary, claimant was coerced into submitting the resignation prior to proven misconduct and told if he did not do so he would be dismissed and his teacher's certificate would be revoked.

The commission then concluded that the employer "failed to meet its burden of proven misconduct," and held that Gray was entitled to benefits. The school board did not appeal this ruling.

Meanwhile, in June 1987, Gray had filed a civil suit in Kenton Circuit Court in which he asserted a breach of contract claim, among others. In December, 1989, he moved the trial court for partial summary judgment on this claim. It was Gray's position that the school board was precluded from defending against the breach of contract claim by arguing that Gray resigned, because the unemployment commission had previously found otherwise. In February 1990, the trial court sustained the motion. The school board appeals.

At the heart of this issue is the doctrine of collateral estoppel, also known as the "issue preclusion" doctrine. Specifically, Gray is attempting to use offensive collateral estoppel against the school board by prohibiting them from contesting a finding he asserts was previously made against them.

All parties agree that the use of collateral estoppel regarding previously adjudicated issues (as opposed to res judicata, which concerns previously adjudicated claims), has been endorsed by the United States Supreme Court and adopted by Kentucky. *Parklane Hosiery Company v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Sedley v. City of West Buechel,* Ky., 461 S.W.2d 556 (1971). While not specifically stated, the Court in *Sedley* appears to sanction both defensive and offensive use of the doctrine; however, we are cautioned by the United States Supreme Court that special problems arise when the doctrine is used in an offensive manner. *Parklane, supra,* 439 U.S. at 331, 332, 99 S.Ct. at 651–52, 652. *See* also, *Offensive Collateral Estoppel in Kentucky: A Deadly Weapon or a Paper Tiger?,* 76 K.L.J. 237, 246–50 (1987–88).

A party attempting to apply collateral estoppel offensively must meet several stringent requirements, including proving that the issue in question was actually and necessarily litigated and determined, and that the losing party was given a full and fair opportunity to contest. *Sedley,* 461 S.W.2d at 559. Additionally, in *Parklane,* the United States Supreme Court listed factors which it believed might limit use of the doctrine, including the bound party's lack of incentive to litigate in the prior action, as well as any other unspecified reason which might work an inequity on the losing party. *Parklane,* 439 U.S. at 331–32, 99 S.Ct. at 651–52. The facts of this case lead us to conclude that Gray failed to satisfy these requirements in particular.

First, we cannot conclude that the issue sought to be precluded by Gray, specifically that the school board breached his employment contract by firing him, was actually litigated and determined by the commission. Kentucky's unemployment compensation system is set up to expeditiously award temporary, monetary benefits to a worker after loss of his or her job. In order to receive such benefits, the worker must prove (or the employer, conversely, disprove) that he or she was involuntarily separated from employment without good cause on the employer's part. KRS 341.-370. The system's sole function is to determine whether or not the affected employee meets the statutory criteria to qualify for benefits, not to inquire or make any judgments regarding the reasons behind an employee's termination. Other jurisdictions have recognized this critical distinction, and

we concur with their reasoning. *Caras v. Family First Credit Union*, 688 F.Supp. 586, 589 (D. Utah 1988, applying Utah law); *Salida School District R–32–J v. Morrison*, 732 P.2d 1160, 1165 (Colo.1987); *See also, Roberts v. Wake Forest University*, 55 N.C.App. 430, 286 S.E.2d 120, 124 (1982).

Second, we do not believe that the procedures utilized in the unemployment system either grant any party a full, true opportunity to litigate issues, or even encourage any meaningful participation in the process. As we stated, the unemployment system is set up to quickly determine benefit eligibility status. Hearings are generally informal and expeditious. The rules of evidence are relaxed.[1] This, of course, often leads to the inclusion of evidence which might otherwise be inadmissible in a court of law. *McClanahan v. Remington Freight Lines*, 517 N.E.2d 390, 395 (Ind. 1988). Too, the amounts involved are often minimal, quite different than the substantial damages which might be sought in a civil court of law. The employer, not desirous of litigating over such small amounts and narrow issues, often chooses not to appear at the hearing or appeal an adverse decision. Section 28 of the *Restatement (Second) of Judgments* observes that offensive collateral estoppel may be inappropriate where the amounts in controversy are "markedly different," or when the "quality and extensiveness" of the two proceedings are not comparable. In short, the profound differences between unemployment proceedings and those found in a court of law lead us to conclude that the application of binding estoppel would simply be inappropriate. Other jurisdictions agree. *See, Salida School District, supra*, at 1165; *Caras, supra* at 589 and *McClanahan, supra* at 395.

Last, we simply do not believe that it would be equitable to allow the doctrine to be applied, particularly in an offensive mode. Having noted that unemployment proceedings are ordinarily quickly and informally disposed of, we can easily imagine the untenable burden which would be placed on the system were we to hold that any findings could conceivably bind all parties in later proceedings. As the Supreme Court of Indiana noted, using such findings as a basis for offensive collateral estoppel "might well force the parties to convert such proceedings into longer and more expensive ones." *McClanahan, supra* at 395.

The Colorado Supreme Court perhaps best summarized the reasons why unemployment findings should not be given the cloak of collateral estoppel, opining thus:

> An unemployment compensation hearing is designed to adjudicate promptly a narrow issue of law, and to grant a limited remedy to an unemployed worker. The use of an unemployment compensation decision to bind the parties in a subsequent ... action ... would be wholly inappropriate, and would frustrate the underlying purpose of ... collateral estoppel. If findings entered at an unemployment compensation hearing may be used to establish the employer's liability ... in a subsequent lawsuit, the employer would have a strong incentive to use its superior resources consistently to oppose a discharged employee's claim for unemployment benefits. Issues presented ... will be contested strongly, and the hearings will become lengthy and more detailed, and will no longer be suited to the prompt resolution of unemployment compensation claims. Judicial economy would be frustrated, rather than improved, as many unemployment compensation hearings become forums in which claims for unlawful or unconstitutional discharge are tried. (*Salida, supra* at 1165.)

For all the foregoing reasons, we reverse the Kenton Circuit Court.

All concur.

---

**1.** 903 KAR 5:130, section 4, subsection 4, states that unemployment hearings "shall be informally conducted without regard to common law, statutory or technical rules or procedure ..."