JOHNNY E. WORKMAN, Employee, Plaintiff v. RUTHERFORD ELECTRIC MEMBER-
SHIP CORPORATION, Employer, SELF INSURED (FEDERATED RURAL ELEC-
TRIC INSURANCE EXCHANGE, Third Party Administrator), Defendant

No. COA04-491

(Filed 7 June 2005)

**1. Workers' Compensation— disability—discharge for misconduct**

Workers' compensation benefits are barred if an employee's
loss of wages is attributable to a wrongful act resulting in loss of
employment, but the employee is entitled to benefits if the loss
of wages is due to the employee's work-related disability. The
elements required for payment to be barred include a showing
that the same misconduct would result in the termination of a
nondisabled employee. The plaintiff in this case, frustrated at
not being assigned work within his medical limitations, re-
peated a joke from a lawyer, but committed no act of physical
violence. The Commission found that there was no evidence
that another employee who made similar statements would have
been terminated.

**2. Workers' Compensation— affidavit—opportunity to re-
but—corroborative**

The trial court did not abuse its discretion in a workers' com-
pensation case in the admission and consideration of an affidavit
from an attorney who told plaintiff a joke, which was interpreted
as a threat when plaintiff repeated it and for which plaintiff was
fired. Although defendant contended that the Commission should
have allowed it the opportunity to rebut or discredit the evidence,
it was only corroborative of other testimony and was not prejudi-
cial even if erroneously admitted because the remaining findings
support the Commission's conclusion.

**3. Workers' Compensation— disability—factors in determin-
ing—findings**

An Industrial Commission conclusion that a workers' com-
pensation plaintiff was disabled was remanded where the
Commission made no findings regarding one of the four factors
indicating disability and whether plaintiff had met that burden.

WORKMAN v. RUTHERFORD ELEC. MEMBERSHIP CORP.

[170 N.C. App. 481 (2005)]

**4. Workers' Compensation— discharge for misconduct— Employment Security Commission decision—not res judicata**

A workers' compensation determination of whether plaintiff was terminated for misconduct, which would bar benefits, was not prevented by the Employment Security Commission's decision on the subject. Defendant did not cite authority for application of res judicata or collateral estoppel, and, while the factual determination is similar, the different interests at stake distinguish the ESC's determination from the issue before the Industrial Commission.

**5. Workers' Compensation— causation—findings—medical testimony—more than speculation**

The Industrial Commission's finding of fact in a workers' compensation case that plaintiff's urological condition was caused by his accident was supported by competent evidence in the record. The testimony of plaintiff's medical expert was not without equivocation, but it was more than speculation, and the Commission is the sole judge of the credibility of witnesses.

**6. Workers' Compensation— causation—expert testimony— more than conjecture**

Competent evidence supported the Industrial Commission's finding of fact in a workers' compensation case that plaintiff's depression is causally related to his work-related accident. A psychologist's testimony of "a very strong linkage" between the development of plaintiff's psychological condition and his accident is sufficient to take the case beyond conjecture and remote possibility.

**7. Appeal and Error— preservation of issues—assignments of error—sufficiency of supporting authority**

An assignment of error concerning medical expenses in a workers' compensation case was dismissed where defendant cited (incorrectly) only the definitions portion of the Workers' Compensation Act and did not argue how the statute applied to the assignment of error.

Judge Wynn concurring.

WORKMAN v. RUTHERFORD ELEC. MEMBERSHIP CORP.

[170 N.C. App. 481 (2005)]

Appeal by defendant from opinion and award entered 18 November 2003 by Commissioner Christopher Scott for the North Carolina Industrial Commission. Heard in the Court of Appeals 7 December 2004.

*Daniel Law Firm, P.A., by Stephen T. Daniel and Warren T. Daniel, for plaintiff-appellee.*

*Teague, Campbell, Dennis & Gorham, L.L.P., by J. Matthew Little and Tara Davidson Muller, for defendant-appellant.*

TYSON, Judge.

Rutherford Electric Membership Corporation ("REMC") and Federated Rural Electric Insurance Exchange ("agent") (collectively, "defendant") appeal from opinion and award entered by the Full Commission of the North Carolina Industrial Commission ("the Commission") that awarded Johnny E. Workman ("plaintiff") total disability compensation. We affirm in part and remand for further findings of fact.

## I. Background

Plaintiff was employed by REMC as a first-class lineman. His job included repairing damaged electrical power lines, which required him to climb utility poles. On 21 February 1997, plaintiff was injured during the course and scope of his employment when an electrical utility pole fell and landed across his abdominal area. Plaintiff suffered injuries to various parts of his body during the accident, which REMC immediately accepted as compensable. Defendant promptly began paying plaintiff temporary total disability benefits pursuant to Form 60 at the weekly rate of $512.00.

Plaintiff underwent two surgeries for internal injuries and digestive complications. In August 1997, he underwent surgery to remove a parathyroid gland. In November 1998, his gall bladder was removed and a hiatal hernia was repaired.

On 7 January 1998, plaintiff returned to work for REMC as an assistant staking technician earning an average weekly wage of $220.70. Due to the salary reduction, defendant paid plaintiff temporary partial disability benefits pursuant to Form 62 at varying rates depending on the number of hours plaintiff worked. Plaintiff was assigned physically demanding and difficult tasks. His job description, as written by REMC and submitted to plaintiff's doctors for

approval, did not include the strenuous physical tasks that plaintiff was actually assigned to do, which included chopping right-of-ways with a bush axe and moving large quantities of dirt with a shovel. These physically demanding tasks aggravated plaintiff's medical condition and caused him to accumulate blood in his urine. As a result, plaintiff was hospitalized and diagnosed with recurrent gross hematuria.

After plaintiff was released, he returned to work and was assigned similar work duties. Plaintiff requested less strenuous jobs and was told none were available. On 9 September 1999, Dr. Leon Dickerson ("Dr. Dickerson") restricted plaintiff's employment to lifting no greater than thirty pounds occasionally, no prolonged bending, stooping, squatting, or climbing on ladders and no working on rough terrain. On 7 January 2000, Dr. Dickerson continued these work restrictions. Plaintiff was never assigned to light-duty work. According to Dr. Anthony H. Wheeler ("Dr. Wheeler"), plaintiff's treating physician, if plaintiff continued to perform on-the-job tasks, such as using a shovel and a bush axe, he would "eventually become unemployable."

Plaintiff became frustrated with the status of his employment and contacted Sean C. Cobourn, Esquire ("Cobourn"), a South Carolina attorney, regarding legal representation. Plaintiff testified Coburn told him a "joke" during a telephone conversation:

I asked the lawyer if there was anything that he could do with workmen's comp because they wasn't paying my doctor bills, they wasn't paying me—they was behind paying me and I was behind on my house payment and everything else. I said, "I need somebody to do something now." He [the attorney] laughed and he said, "Well," he said, "the only thing I know you can do is whip his ass and it will cost you five hundred dollars to do that."

Both plaintiff and Coburn laughed at this remark, and testified it was a "joke." Plaintiff's wife recalled plaintiff retelling the lawyer's "joke" to others.

During plaintiff's return to work, he became increasingly frustrated with his treatment by defendant. He expressed his discontent regarding medical treatment being denied, receipt of numerous medical collection letters, and difficult working conditions.

In response to plaintiff's increasing frustration, nurse case-worker, Kay Galvin ("Nurse Galvin"), submitted a request to the

adjuster to approve psychological treatment for plaintiff on 18 January 2000. On 1 February 2000, plaintiff and Nurse Galvin were present at a doctor's office waiting for an appointment when plaintiff repeated the lawyer's "joke." Nurse Galvin reported plaintiff's remarks to REMC. On 7 February 2000, REMC terminated plaintiff for "workplace violence."

On 18 December 2000, plaintiff requested a hearing on claims of a changed medical condition, an inability to agree on the amount of benefits due, defendant's denial of certain medical treatment, and improper termination. After a hearing on 11 April 2003, the Commission entered its opinion and award on 18 November 2003 that: (1) awarded plaintiff total disability compensation "at the rate of $512.00 per week from 8 February 2000 and continuing until plaintiff returns to work or until further order of the Commission; (2) ordered defendant to pay for "medical expenses incurred as a result of the compensable injury as may reasonably be required to [provide treatment for] . . . right knee condition, [] impotence, blood in urine, and problems with urination . . . and [] depression;" and (3) ordered defendant to provide plaintiff with vocational rehabilitation services. Defendant appeals.

## II. Issues

Defendant contends the Commission erred by: (1) finding and concluding defendant's decision to terminate plaintiff's employment violated the test set forth in *Seagraves v. Austin Co. of Greensboro*, 123 N.C. App. 228, 472 S.E.2d 397 (1996); (2) finding plaintiff to be totally disabled; (3) not applying the doctrine of collateral estoppel with regard to plaintiff's termination; (4) finding that plaintiff's urological condition is causally related to his work accident and compensable; (5) finding that plaintiff's psychological condition is causally related to his work accident and compensable; and (6) ordering defendant to pay all of plaintiff's medical costs related to his work accident.

## III. Standard of Review

On appeal from the Commission in a workers' compensation claim, our standard of review requires us to consider: whether there is any competent evidence in the record to support the Commission's findings of fact and whether these findings support the Commission's conclusions of law. The findings of fact made by the Commission are conclusive upon appeal when supported

by competent evidence, even when there is evidence to support a finding to the contrary. In weighing the evidence the Commission is the sole judge of the credibility of the witnesses and the weight to be given to their testimony and may reject a witness' testimony entirely if warranted by disbelief of that witness. Where no exception is taken to a finding of fact . . ., the finding is presumed to be supported by competent evidence and is binding on appeal.

*Bass v. Morganite, Inc.*, 166 N.C. App. 605, 608-09, 603 S.E.2d 384, 386-87 (2004). "The Commission is the sole judge of the credibility of witnesses and may believe all or a part or none of any witness's testimony . . . ." *Harrell v. Stevens & Co.*, 45 N.C. App. 197, 205, 262 S.E.2d 830, 835, *disc. rev. denied*, 300 N.C. 196, 269 S.E.2d 623 (1980) (citation omitted).

## IV. Termination of Employment

Defendant contends the trial court erred in finding and concluding that REMC's decision to terminate plaintiff was not based upon plaintiff's misconduct or fault. We disagree.

### A. *Seagraves* Test

[1] According to *Seagraves*, the lawful termination of an employee for a reason unrelated to his disability and under circumstances justifying termination of any other employee constitutes a refusal to work. 123 N.C. App. 228, 472 S.E.2d 397. An employee who actually or constructively refuses suitable employment is barred from receiving benefits by N.C. Gen. Stat. § 97-32. *Id.* at 230, 472 S.E.2d at 399. The pertinent test is "whether the employee's loss of . . . wages is attributable to the wrongful act resulting in loss of employment, in which case benefits will be barred, or whether such loss . . . is due to the employee's work-related disability, in which case the employee will be entitled to benefits for such disability." *Id.* at 234, 472 S.E.2d at 401.

"[U]nder the *Seagraves*' test, to bar payment of benefits, an employer must demonstrate initially that: (1) the employee was terminated for misconduct; (2) the same misconduct would have resulted in the termination of a nondisabled employee; and (3) the termination was unrelated to the employee's compensable injury." *McRae v. Toastmaster, Inc.*, 358 N.C. 488, 493, 597 S.E.2d 695, 699 (2004). The employer carries the initial burden to demonstrate all three elements by a greater weight of the evidence. *Id.* at 499, 597 S.E.2d at 702.

In *McRae*, our Supreme Court approved the *Seagraves* test:

In our view, the test provides a forum of inquiry that guides a fact finder through the relevant circumstances in order to resolve the ultimate issue: Is a former employee's failure to procure comparable employment the result of his or her job-related injuries or the result of the employee's termination for misconduct? In disputes like the one at bar, the critical area of inquiry into the circumstances of an injured employee's termination is to determine from the evidence whether the employee's failure to perform is due to an *inability* to perform or an *unwillingness* to perform.

*Id.* at 494, 597 S.E.2d at 700. Our Supreme Court further noted

the pertinent inquiry under *Seagraves* is not focused on determining whether an employer may fire an injured employee for misconduct unrelated to his injuries; it is clear that an employer may do so. *See, e.g.*, N.C.G.S. § 95-241(b) (2003). Rather, the relevant question is determining whether, upon firing an injured employee for such misconduct, an employer can nevertheless be held responsible for continuing to pay injury benefits to the terminated employee.

*Id.* at 494, 597 S.E.2d at 699.

Defendant contends the Commission erred by finding, "Defendant has presented no evidence that a worker who said what plaintiff did would have been terminated as plaintiff was. The case presented regarding the fired worker who committed assault presents a completely different factual paradigm." Competent evidence in the record supports this finding. The only evidence defendant presented regarding termination of an employee for workplace violence was testimony that a right-of-way crew foreman with REMC was fired for engaging in "a fight at a store on company time." That employee was not a workers' compensation claimant at the time of his termination and was subsequently rehired by employer.

The Commission distinguished the instance wherein that employee engaged in actual physical violence. If plaintiff had engaged in physical violence on the job, the result here may well have been different. According to defendant, plaintiff was fired for making "threats" towards other employees. However, no evidence was presented to show that an employee who made "threats" similar to the statements made by plaintiff would have been terminated. *See id.*; *see*

*also Frazier v. McDonald's*, 149 N.C. App. 745, 562 S.E.2d 295 (2002), *cert. denied*, 356 N.C. 670, 577 S.E.2d 117 (2003).

Defendant presented some evidence towards showing REMC had a bonafide reason for firing plaintiff. However, REMC failed to satisfy its burden of proving the same misconduct would have resulted in termination of a non-disabled employee. Defendant failed to establish the requirements set forth in *Seagraves*, 123 at 234, 472 S.E.2d at 401, and approved in *McRae*, 358 N.C. at 493, 597 S.E.2d at 699. Further, it is the duty of the Commission and not this Court to weigh the evidence. *Harrell*, 45 N.C. App. at 205, 262 S.E.2d at 835. This assignment of error is overruled.

### B. Admission of Cobourn's Affidavit

[2] Defendant argues the Commission erred by admitting and considering the affidavit from Cobourn who participated in the conversation with plaintiff regarding the "lawyer's joke."

Defendant cites *Allen v. K-Mart* which held, "where the Commission allows a party to introduce new evidence which becomes the basis for its opinion and award, it must allow the other party the opportunity to rebut or discredit that evidence." 137 N.C. App. 298, 304, 528 S.E.2d 60, 64-65 (2000). In *Cummins v. BCCI Constr. Enters.*, we distinguished *Allen* and stated, "In *Allen*, the employee attempted to submit evidence of independent medical examinations by a psychiatrist and a physician with experience in diagnosing and treating *fibromyalgia*. The employee did not consult a fibromyalgia specialist prior to the hearing before the deputy commissioner." 149 N.C. App. 180, 185, 560 S.E.2d 369, 372, *disc. rev. denied*, 356 N.C. 611, 574 S.E.2d 678 (2002). In *Cummins*, we held that the Commission did not manifestly abuse its discretion in denying the defendants' motion to depose a doctor after the plaintiff presented into evidence medical reports prepared by the doctor. *Id.* This Court ruled, "Evidence of [the doctor's] report is merely an update of plaintiff's continued problems for the same injury. Thus, it is not 'significant new evidence' as in *Allen.*" *Id.*

We find the reasoning in *Cummins* persuasive and *Allen* to be distinguishable. Here, Cobourn's affidavit only corroborated the evidence presented through plaintiff's and his wife's testimony. Defendant fails to show the affidavit disclosed any "significant new evidence." *Id.*

Presuming, as defendant argues, that the admission of Cobourn's affidavit was error, defendant has failed to demonstrate that any error

was prejudicial. "Where, after erroneous factual findings have been excluded, there remain sufficient findings of fact based on competent evidence to support the Commission's conclusions, its ruling will not be disturbed." *Torain v. Fordham Drug Co.*, 79 N.C. App. 572, 576, 340 S.E.2d 111, 114 (1986) (citing *Wachovia Bank and Trust Co. v. Bounous*, 53 N.C. App. 700, 281 S.E.2d 712 (1981)). Here, even striking those portions of the Commission's findings of fact regarding Cobourn's affidavit, the remaining findings of fact and our previous holding support the Commission's conclusion that defendant failed to show that plaintiff was terminated for misconduct or fault. This assignment of error is overruled.

## V. Disability

[3] Defendant contends the Commission erred by concluding plaintiff was disabled. We agree and remand for further findings of fact.

> The employee bears the burden of proving each and every element of compensability. *Harvey v. Raleigh Police Dep't*, 96 N.C. App. 28, 35, 384 S.E.2d 549, 553 (1989). The employee can prove that he is disabled in one of four ways by production of: (1) medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but has after a reasonable effort been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) evidence that he has obtained other employment at a wage less than that earned prior to the injury. *Russell v. Lowes Prod. Distrib.*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993).

*Springer v. McNutt Serv. Grp., Inc.*, 160 N.C. App. 574, 577, 586 S.E.2d 554, 556 (2003).

Here, the Commission made no findings of fact regarding plaintiff's burden to establish one of the four factors and whether plaintiff met his burden. The findings of fact show:

> 19. Anthony H. Wheeler, a neurologist and pain management doctor, testified that plaintiff was unable to do the job of assistant staking technician, and that requiring plaintiff to do this job would probably cause him to "eventually become unemployable."

20. Dr. Alan F. Jacks, a general surgeon, testified that using a bush axe or shovel, and walking over rough terrain, would cause "significant strain within the abdomen," and "may create symptoms of pain and significant exertion."

21. Dr. Leon A. Dickerson, an orthopaedic surgeon, testified that plaintiff would be unable to do a job that required him to do repetitive lifting, and that doing work such as using a bush axe or shovel would cause considerable pain.

22. Dr. Wheeler testified as follows regarding plaintiff's ability to return to work:

    ". . . My opinion is that he needs guidance and training and he needs a lighter job activity that would include, you know, no lifting over, say, ten pounds occasionally and the ability to change position as necessary, no static forward bending postures, limit reaching postures, and I wouldn't want him crawling, bending or squatting on a frequent basis or even on an occasional basis."

23. Plaintiff has been temporarily totally disabled since 7 February 2000, the day his employment was terminated.

These findings show plaintiff, although limited in the work he can perform, is capable of performing some work. The Commission is required to determine whether competent evidence exists to support a finding of disability based on the presentation of: "(2) evidence that he is capable of some work, but has after a reasonable effort been unsuccessful in his efforts to obtain employment; [or] (3) evidence that he is capable of some work but that it would be futile because of preexisting conditions . . . to seek other employment." *Id.*

Here, the Commission made no findings regarding either of these two factors. Plaintiff argues he presented evidence that he sought employment, but was unsuccessful in obtaining a job. The Commission entered no findings of fact on this evidence. Further, if plaintiff satisfied his burden of proof to establish one of the elements under *Russell*, the burden shifts to defendant to "come forward with evidence to show not only that suitable jobs are available, *but also that the plaintiff is capable of getting one* . . . ." *Burwell v. Winn-Dixie Raleigh*, 114 N.C. App. 69, 73, 441 S.E.2d 145, 149 (1994). Presuming without holding competent evidence satisfies plaintiff's burden, the Commission also failed to enter findings of fact regarding whether defendant satisfied its burden of proof. Without proper find-

ings under *Russell*, no competent evidence supports the Commission's conclusion awarding plaintiff's total disability. We remand to the Commission to make findings of fact, based on competent evidence, to determine whether plaintiff is totally disabled.

## VI. Collateral Estoppel

[4] Defendant contends the Commission erred in failing to address its argument that the issue of REMC's decision to terminate plaintiff's employment had already been litigated and decided by the North Carolina Employment Security Commission ("ESC"). We disagree.

In *Roberts v. Wake Forest University*, this Court ruled on a similar argument. 55 N.C. App. 430, 436, 286 S.E.2d 120, 124, *disc. rev. denied*, 305 N.C. 586, 292 S.E.2d 571 (1982). The plaintiff in *Roberts* argued, "the ruling of the Employment Security Commission that plaintiff was entitled to unemployment benefits is *res judicata* in this action, because an employee is disqualified for benefits if he (1) left work voluntarily without good cause attributable to the employer, or if he (2) was discharged for misconduct connected with his work. G.S. 96-14(1) and 96-14(2)." *Id.* In response, this Court held, "We find no merit in this argument because the issue before the Commission and the issue before the court in this action for breach of contract are not the same. Too, the doctrine of *res judicata* is inapplicable to adjudication by unemployment compensation agencies." *Id.* (citing 76 Am. Jur. 2d Unemployment Compensation § 93 (1975)).

In *Goins v. Cone Mills Corp.*, this Court held the deceased employee's wife was not estopped to litigate the issue of total permanent disability because she was not a party to the claim for the employee's lifetime benefits and was not in privity with a party to that claim. 90 N.C. App. 90, 92-93, 367 S.E.2d 335, 336-37, *disc. rev. denied*, 323 N.C. 173, 373 S.E.2d 108 (1988).

> Under the principle of collateral estoppel, "parties and parties in privity with them—even in unrelated causes of action—are precluded from retrying fully litigated issues that were decided in any prior determination and were necessary to the prior determination." *King v. Grindstaff*, 284 N.C. 348, 356, 200 S.E.2d 799, 805 (1973). A companion doctrine to *res judicata*, which bars every ground of recovery or defense which was actually presented or which could have been presented in the previous action, collateral estoppel bars only those issues actually decided which were necessary to the prior finding or verdict. *Id.* Like *res judicata*,

collateral estoppel only applies if the prior action involved the same parties or those in privity with the parties and the same issues. *Id.* In the context of collateral estoppel and *res judicata,* the term privity indicates a mutual or successive relationship to the same property rights. *Moore v. Young,* 260 N.C. 654, 133 S.E.2d 510 (1963). An exception to the general requirement of privity exists where one not actually a party to the previous action controlled the prior litigation and had a proprietary interest in the judgment or in the determination of a question of law or facts on the same subject matter.

*Id.* In *Goins,* we distinguished between the property rights at issue and reasoned the employee had previously filed a claim for lifetime disability benefits, while the wife was pursuing a claim for death benefits. 90 N.C. App. at 93-94, 367 S.E.2d at 337. Although the determination of "disability" was common to both actions, the wife was entitled to a separate determination and was "not collaterally estopped to litigate the issue of total permanent disability." *Id.* at 93, 367 S.E.2d at 337.

On 14 July 2000, the ESC issued its Appeals Decision by Appeals Referee Charles M. Brown, Jr., which disqualified plaintiff from unemployment benefits because plaintiff had "made threatening remarks about other employees of the employer." The ESC concluded that plaintiff "was discharged for misconduct connected with his work." Plaintiff did not appeal this decision.

Defendant argues this determination by the ESC's Appeals Decision prevented re-litigation of the same issue before the Commission, but fail to cite any cases or other authority where *res judicata* or collateral estoppel were applied in workers' compensation cases to support their argument. Although this factual determination of plaintiff's misconduct is similar, the different interests at stake, namely whether unemployment benefits and compensation for disability should be awarded to plaintiff, distinguish ESC's determination from the issue before the Commission. This assignment of error is overruled.

## VII.  Findings of Fact Regarding Other Conditions

[5] Defendant argues the Commission erred by finding that plaintiff's urological and psychological conditions are compensable and the findings of fact regarding the compensability of these conditions are not supported by competent evidence. We disagree.

A. Urological Condition

Defendant contends no evidence supports the Commission's finding of fact which states:

Upon consideration of the testimony of Dr. Wheeler, Dr. Dominick Carbone, and the record as a whole, the greater weight of the evidence establishes that plaintiff's impotence, blood in urine, and problems with urination including a burning sensation upon urination and inability to control urination, were caused by the accident on February 21, 1997.

In his deposition dated 5 April 2002, plaintiff's counsel questioned Dr. Wheeler, who testified as follows:

Q: In your opinion, is [plaintiff's pain from the injury] more likely to have caused the impotency than a pack a day or smoking habit that [plaintiff] may have had for 20 years?

A: Again, I see patients with post-traumatic injuries . . . and my opinion in regard to Mr. Workman is that his cigarettes could or might have caused his impotence and that his low back pain could or might have contributed as well to his impotence . . . .

Under our Supreme Court's holding in *Holley v. ACTS, Inc.*, 357 N.C. 228, 581 S.E.2d 750 (2003), "could or might" testimony is insufficient to establish medical causation in a workers' compensation claim. *Edmonds v. Fresenius Med. Care*, 165 N.C. App. 811, 818, 600 S.E.2d 501, 506 (2004) (J. Steelman, dissenting), *rev'd per curiam*, 359 N.C. 313, 608 S.E.2d 755 (2005).

[O]nly an expert can give competent opinion evidence as to the cause of the injury. However, when such expert opinion testimony is based merely upon speculation and conjecture, . . . it is not sufficiently reliable to qualify as competent evidence on issues of medical causation. The evidence must be such as to take the case out of the realm of conjecture and remote possibility, that is, there must be sufficient competent evidence tending to show a proximate causal relation.

*Holley*, 357 N.C. at 232, 581 S.E.2d at 753 (internal citations and quotations omitted).

The following month after deciding *Edmonds*, our Supreme Court in *Alexander v. Wal-Mart Stores, Inc.*, reiterated "the role of the Court of Appeals is 'limited to reviewing whether any competent evi-

dence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law.' " 166 N.C. App. 563, 573, 603 S.E.2d 552, 558 (2004) (J. Hudson, dissenting) (quoting *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000)), *rev'd per curiam*, 359 N.C. 403, 610 S.E.2d 374 (2005). Our Supreme Court reversed and adopted the dissenting opinion in *Alexander*, holding the greater weight of the evidence standard was met through a medical expert's testimony "establish[ing] that it was 'likely' that [plaintiff's injury] occurred *during* the accident . . . ." 166 N.C. App. at 573, 603 S.E.2d at 558 (emphasis supplied).

Attached to Dr. Wheeler's deposition as Exhibit 4 is a treatment note dated 1 February 2001, wherein Dr. Wheeler stated that plaintiff's "impotence is, more likely than not, related to his injury."

When later asked if plaintiff's impotence was "more likely" caused by back pain resulting from plaintiff's fall, Dr. Wheeler testified that the work-related injuries "could or might have . . . contributed" to plaintiff's impotence.

Our Supreme Court has held "that the entirety of causation evidence" must "meet the reasonable degree of medical certainty standard necessary to establish a causal link between plaintiff's" accident and their injury. *Holley*, 357 N.C. at 234, 581 S.E.2d at 754. "Although medical certainty is not required, an expert's 'speculation' is insufficient to establish causation." *Id.*

The doctor in *Alexander* expressed her causation opinion "repeatedly and without equivocation" that plaintiff's injury "likely . . . occurred during the accident." 166 N.C. App. at 573, 603 S.E.2d at 558. While plaintiff's expert did not testify plaintiff's impotence "likely . . . occurred during" the work-related accident, his treatment note opined that plaintiff's "impotence is, more likely than not, related to his injury." *Id.* Although Dr. Wheeler's later testimony used the terms " 'could' or 'might,' " *Holley*, 357 N.C. at 232, 581 S.E.2d at 753, and was not "without equivocation" as shown by Dr. Wheeler's conflicting testimony and his medical notes, the Commission is the "sole judge" of Dr. Wheeler's credibility, *Alexander*, 166 N.C. App. at 573, 603 S.E.2d at 558. Credibility issues caused by any variance in Dr. Wheeler's treatment notes and his later testimony was for the Commission to decide. *Harrell*, 45 N.C. App. at 205, 262 S.E.2d at 835 ("[T]he Commission is the sole judge of the credibility of witnesses and may believe all or a part or none of any witness's testimony . . . .").

In both *Edmonds* and *Alexander*, our Supreme Court reaffirms the holding in *Holley* that "mere possibility has never been legally competent to prove causation. Although medical certainty is not required, an expert's 'speculation' is insufficient to establish causation." *Holley*, 357 N.C. at 234, 581 S.E.2d at 754 (internal citation omitted); *Edmonds*, 165 N.C. App. at 818, 600 S.E.2d at 506; *Alexander*, 166 N.C. App. at 573, 603 S.E.2d at 558. In reversing the Commission, the *Holley* Court noted, "plaintiff's doctors were unable to express an opinion to any degree of medical certainty as to the cause of plaintiff's [injury]." *Id.*

Plaintiff's expert evidence of causation exceeded "speculation." Dr. Wheeler's testimony of "could or might," together with his impression recorded in his treatment notes that plaintiff's injury "more likely than not [was] related to his injury" is competent evidence to sustain the Commission's conclusion of law that plaintiff's impotence and urination conditions were caused by the accident. *Id.* at 234, 581 S.E.2d at 754; *Edmonds*, 165 N.C. App. at 818, 600 S.E.2d at 506; *Alexander*, 166 N.C. App. at 573, 603 S.E.2d at 558. The Commission's finding of fact is supported by competent evidence in the record. Its conclusion of law awarding compensation for plaintiff's urological condition is affirmed.

## B. Psychological Condition

**[6]** Defendant contends the Commission erred by finding:

> Dr. Brian A. Simpson, a psychologist, testified that there is a "very strong linkage" between plaintiff's development of depression, the accident on February 21, 1997, and "the other events that precipitated, such as chronic pain, such as functional limitations, such as occupation loss . . . ." Dr. Simpson further testified[,] "it would be very improbable" that plaintiff's depression began only after he was terminated, and that in his opinion plaintiff's termination aggravated his depression, which "pre-existed the termination from work." The greater weight of the evidence establishes that plaintiff's depression is causally related to the accident on February 21, 1997.

Dr. Simpson's deposition expert testimony supports this finding of fact. Dr. Simpson testified, that in his expert opinion, "a very strong linkage" exists between the injury and plaintiff's development of depression. He also opined, "I think it would be very improbable that [plaintiff] did not suffer depression until his termination in February

of 2000 and then, as a result of that termination, develop depression. . . . It is my opinion though that the termination of his employment did aggravate his depression." Further, Dr. Simpson testified:

> It was my opinion though and based upon the sequence of events that occurred from the time of his injury that—that the development of depression pre-existed the termination from work and pre-existed the marriage rupture, but did develop subsequent to and related to his injury and chronic pain and the other events that occurred following that
>
> . . . .
>
> I would submit that in reconstructing the sequence of events that his falling as a work injury and the medical complications of that, that it would be reasonable to believe that depression then developed rather rapidly following that injury.

Dr. Simpson's testimony of "a very strong linkage" regarding the causation of plaintiff's psychological condition to his accident is sufficient "to take the case out of the realm of conjecture and remote possibility . . . ." *Holley*, 357 N.C. at 232, 581 S.E.2d at 753 (quoting *Gilmore v. Hoke Cty. Bd. of Educ.*, 222 N.C. 358, 365, 23 S.E.2d 292, 296 (1942)). Competent evidence supports the Commission's finding of fact. This assignment of error is overruled.

### VIII. Medical Expenses

**[7]** Defendant argues the Commission erred by requiring them to pay all medical expenses, not just related medical expenses, on behalf of plaintiff. We disagree.

Defendant argues the Commission's opinion and award is overly broad by ordering defendant to pay for a "comprehensive evaluation of all of plaintiff's medical conditions" and then pay for "any treatment recommended by it." In support of this assignment of error, defendant fails to cite any authority for this proposition other than their cite to "N.C. Gen. Stat. § 97(2)" and the broad assertion that "the Order violates the Workers' Compensation Act." N.C. Gen. Stat. § 97-2, which we presume is the statute defendant attempts to cite as authority, is the section entitled "Definitions" of the Workers' Compensation Act. Defendant fails to argue how this statute applies to their assignment of error or which portions of this statute are applicable. Under Rule 28 of the North Carolina Rules of Appellate Procedure, "[a]ssignments of error . . . in support of which no reason

or argument is stated or authority cited, will be taken as abandoned." N.C.R. App. P. 28(b)(6) (2004); *see also Bass*, 166 N.C. App. at 612, 603 S.E.2d at 388. We do not reach the merit of this assignment of error and it is dismissed.

## IX. Conclusion

The Commission did not err in finding defendant failed to satisfy their burden under *Seagraves* to show plaintiff was terminated for misconduct and not as a result of his compensable injury. The Commission did not err in considering attorney Cobourn's affidavit, despite the fact defendant did not have an opportunity to cross-examine him. The affidavit contained no "significant new evidence" and plaintiff and his wife had testified to those facts. *Cummins*, 149 N.C. App. at 185, 560 S.E.2d at 372. Collateral estoppel does not bar plaintiff's claim for workers' compensation before the Commission even though the ESC reached a different disposition on plaintiff's unemployment benefits. Competent evidence in the record supports the Commission's finding of fact that plaintiff's injury at work caused his psychological condition.

Competent evidence in the record supports the Commission's finding of fact that plaintiff's impotence and urological condition were caused by his accident on 21 February 1997.

The Commission failed to make adequate findings of fact to show plaintiff proved his total disability or is "capable of some work." *Springer*, 160 N.C. App. at 577, 586 S.E.2d at 556. We remand for entry of findings of fact on this issue.

The opinion and award is affirmed in part and remanded for further findings of fact on plaintiff's total disability.

Affirmed in part and Remanded.

Judge McGEE concurs.

Judge WYNN concurs in the result only by separate opinion.

WYNN, Judge concurring with separate opinion.

I respectfully concur in the result from the majority's decision to affirm the Commission's finding of fact on causation of Mr. Workman's urological condition. Following our Supreme Court's decision in *Alexander v. Wal-Mart Stores, Inc.*, 166 N.C. App. 563, 571,

603 S.E.2d 552, 558 (2004) (Hudson, J., dissenting), *rev'd per curiam,*
359 N.C. 403, 610 S.E.2d 374 (2005), since there was competent evi-
dence that Mr. Workman's urological condition was "more likely than
not" caused by his work-place injury, and all of the evidence supports
a conclusion of total disability, I would affirm the Commission's
Opinion and Award.[1] Furthermore, while it is appropriate to remand
for entry of findings of fact on the issue of total disability, under the
facts of this case, such a remand is unnecessary and does not pro-
mote judicial economy.

## Causation under the Workers Compensation Act

In North Carolina, the underlying purpose of the North Carolina
Workers' Compensation Act is to provide compensation to workers
whose earning capacity is diminished or destroyed by injury arising
from their employment. *McRae v. Toastmaster, Inc.,* 358 N.C. 488,
493, 597 S.E.2d 695, 699 (2004). A longstanding rule of construction is
that the Workers' Compensation Act should be liberally construed so
that the benefits under the Act will not be denied by narrow, techni-
cal, or strict interpretation. *Hollman v. City of Raleigh, Pub. Util.
Dep't,* 273 N.C. 240, 252, 159 S.E.2d 874, 882 (1968); *Cates v. Hunt
Constr. Co., Inc.,* 267 N.C. 560, 563, 148 S.E.2d 604, 607 (1966).

After thoroughly reviewing the depositions and medical notes of
Dr. Anthony Wheeler and Dr. Dominick Carbone, I conclude that
there is competent evidence to support the Commission's finding of
fact. The finding states in part, "[u]pon consideration of the testimony
of Dr. Wheeler, Dr. Dominick Carbone, and the record as a whole, the
greater weight of the evidence establishes that plaintiff's impotence,
. . . [was] caused by the accident on February 21, 1997."

Where, as here, medical opinion testimony is required, "medical
certainty is not required, [but] an expert's 'speculation' is insufficient
to establish causation." *Holley v. ACTS, Inc.,* 357 N.C. 228, 234, 581
S.E.2d 750, 754 (2003). In the instant case, there was competent evi-
dence to allow the Commission to determine that the accident at
work caused Plaintiff's injury. And under *Adams,* even in determining
causation, the Commission's finding of fact must stand if supported

---

1. I agree with the majority's holding in that it finds that the Commission did not
err in finding and concluding that the employer's decision to terminate Plaintiff was not
for misconduct or fault; the Commission did not err in considering Cobourn's affidavit;
collateral estoppel does not bar Plaintiff's claim for workers' compensation; and com-
petent evidence in the record supports the Commission's finding of fact that Plaintiff's
injury at work caused his psychological condition.

**WORKMAN v. RUTHERFORD ELEC. MEMBERSHIP CORP.**

[170 N.C. App. 481 (2005)]

by any competent evidence. *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) (citation omitted). Indeed, the record shows that Dr. Wheeler stated that it was "more likely than not" that the impotence was related to Mr. Workman's injury. This is more than mere speculation, it is a preponderance of the evidence; thus, it is competent evidence of causation. *See Holley*, 357 N.C. at 232-33, 581 S.E.2d at 753; *Phillips v. U.S. Air, Inc.*, 120 N.C. App. 538, 541, 463 S.E.2d 259, 261 (1995) (the plaintiff must prove causation by a "greater weight" of the evidence or a "preponderance" of the evidence), *aff'd*, 343 N.C. 302, 469 S.E.2d 552 (1996). Therefore, there is competent evidence to support the finding of fact.

I write separately to further point out that under the standard of review the record need not show that *all* of the evidence shows the doctor expressed his or her causation opinion "without equivocation." *See Alexander*, 166 N.C. App. at 573, 603 S.E.2d at 558. Under our standard of review, our Supreme Court has stated many times that the role of this Court is limited to determining "whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). Our review " 'goes no further than to determine whether the record contains any evidence tending to support the finding.' " *Adams*, 349 N.C. at 681, 509 S.E.2d at 414 (citation omitted). The Commission's findings of fact "are conclusive on appeal when supported by competent evidence," even if there is evidence to support a contrary finding, *Morrison v. Burlington Indus.*, 304 N.C. 1, 6, 282 S.E.2d 458, 463 (1981), and may be set aside on appeal only "when there is a complete lack of competent evidence to support them[.]" *Young v. Hickory Bus. Furniture*, 353 N.C. 227, 230, 538 S.E.2d 912, 914 (2000). Further, all evidence must be taken in the light most favorable to the plaintiff, and the plaintiff "is entitled to the benefit of every reasonable inference to be drawn from the evidence." *Deese*, 352 N.C. at 115, 530 S.E.2d at 553.

In *Alexander*, our Supreme Court reiterated the role of this Court by adopting Judge Hudson's dissent stating, "I do not believe it is the role of this Court to comb through the testimony and view it in the light most favorable to the defendant . . . this Court's role is not to engage in such a weighing of the evidence." *Alexander*, 166 N.C. App. at 573, 603 S.E.2d at 558. The majority states that, "The doctor in *Alexander* expressed her causation opinion 'repeatedly and without equivocation' . . . ." But to be sure, the complete statement

from *Alexander* was that *"much* of the evidence reveals that the doctor expressed her opinions repeatedly and without equivocation." *Id.* (emphasis supplied). Thus, *Alexander* does not require that *all* of the evidence must show that the doctor expressed his opinion "without equivocation."

Here, where the records of Dr. Wheeler support the Commission's finding, when viewed in light of the standard of review, the finding should be upheld. *See Alexander*, 166 N.C. App. at 573, 603 S.E.2d at 558; *Adams*, 349 N.C. at 681, 509 S.E.2d at 414 (holding that the decision concerning what weight to give expert evidence is a duty for the Commission and not this Court).

As the record shows competent testimony on causation by Dr. Wheeler that is not speculative, but expresses a competent expert opinion, I would conclude that under our caselaw the Commission's finding is supported by competent evidence. Accordingly, the opinion and award of the Commission should be affirmed.

### Remand for Findings on Disability

"Ordinarily, when an agency fails to make a material finding of fact or resolve a material conflict in the evidence, the case must be remanded to the agency for a proper finding." *N.C. Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 674, 599 S.E.2d 888, 904 (2004) (citation omitted). But further proceedings are neither necessary nor advisable when all evidence in the record points to only one conclusion. *Id.* at 675, 599 S.E.2d at 904. *See State v. Daughtry*, 340 N.C. 488, 514, 459 S.E.2d 747, 760 (1995) (trial court erred by failing to make a finding of fact that a statement possessed the requisite trustworthiness, however, the record sustained the trial court's conclusion making the error harmless). Because the evidence in this matter pointed to only one conclusion, and Defendant offered no evidence in rebuttal, I would find it unnecessary to remand this matter to the Commission for administrative entry of the proper findings.

The Commission is required to determine whether competent evidence exists to support a finding of disability based on the presentation of evidence that he is capable of some work, but has after a reasonable effort been unsuccessful in his efforts to obtain employment; or evidence that he is capable of some work but that it would be futile because of preexisting conditions to seek other employment. *Russell v. Lowes Prod. Distrib.*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993). Once the plaintiff satisfies his burden of proof to

establish one of the elements under *Russell,* the burden shifts to the defendant to "come forward with evidence to show not only that suitable jobs are available, but also that the plaintiff is capable of getting one . . . ." *Burwell v. Winn-Dixie Raleigh, Inc.,* 114 N.C. App. 69, 73, 441 S.E.2d 145, 149 (1994) (emphasis omitted).

While, the Commission failed to make findings of fact on this evidence, the record shows, and the majority agrees, that Plaintiff presented evidence that he sought employment but was unsuccessful in obtaining a job. However, there is no evidence in the record that Defendants rebutted Plaintiff's evidence.

Like in *Carroll,* further proceedings are unnecessary as the record points to only one conclusion: That Plaintiff sought employment but was unable to obtain a job and Defendants failed to rebut Plaintiff's evidence. Therefore, it is unnecessary to remand to the Commission for further findings. *Carroll,* 358 N.C. at 675, 599 S.E.2d at 904.