ARROWOOD, Judge.
Deborah Wright Lewis ("plaintiff") appeals from the opinion and award of the Full Commission of the North Carolina Industrial Commission ("the Commission") denying her claim for workers' compensation benefits. For the reasons stated herein, we affirm the Commission's opinion and award.
I. Background
On 19 February 2015, Lowe's Home Centers, LLC and Sedgwick Claims Management Services ("defendants") filed a Form 19 with the Commission reporting that plaintiff sustained an injury to her right shoulder while "pulling a box of nails down" on 11 February 2015. Defendants denied plaintiff's claim for workers' compensation benefits that same day, filing a Form 61 because "[t]here [was] no evidence to support an injury by accident arising out of and in the course and scope of employment." On 26 February 2015, defendants filed a second Form 61. On 30 July 2015, plaintiff filed a Form 18, which was acknowledged by the Commission on 5 August 2015. On 15 September 2015, plaintiff filed a request that her claim be assigned for hearing, which proceeded on 13 April 2016. Deputy Commissioner William H. Shipley entered an opinion and award, concluding plaintiff sustained a compensable accidental injury to her right shoulder on 11 February 2015. Defendants appealed to the Commission.
On 19 April 2017, the Commission reviewed this matter. On 24 July 2017, the Commission entered an opinion and award, finding as follows. On the date of the alleged injury, plaintiff worked for defendant Lowe's Home Center as a customer service associate in the hardware department. Her job duties included "downstocking[,]" a task involving standing on a ladder, and reaching overhead "to take items weighing thirty pounds or more from the top shelves to replenish the lower shelves[.]"
On 11 February 2015, plaintiff was down-stocking a thirty-pound box of nails and screws when she injured her right shoulder. Plaintiff reported the injury to Assistant Store Manager Michael Dixon, and later to Assistant Store Manager Juan Carlos Muniz ("Muniz"), who filled out a Form 19. The form indicated that "while pulling a box of nails down, [plaintiff] felt a pop in her right shoulder." Similarly, plaintiff completed an employee statement, which indicated, "While downstocking on [sic ] screws and nails and felt shoulder pop and almost dropped box and yelled for [her coworker] who was on same aisle, but was able to get product in shelf." A Nurse Advocacy Report was also completed, with plaintiff's assistance. It described the injury as, "down stocking-reaching for box of merchandise and felt shoulder 'pop'-experienced pain." The report described the mechanism of injury as a "strain or injury by reaching."
After plaintiff reported the injury, she went to FastMed Urgent Care on 16 February 2015. There, she reported severe right shoulder pain, which she attributed to a work injury when she "was pulling a 25-30 lb box overhead when she heard a pop and immediately felt shoulder pain." Physician Assistant McKenzie Miller Elkin ("Elkin") diagnosed "sprain/strain shoulder/arm," and prescribed Flexeril and Naprosyn.
On 18 February 2015, plaintiff spoke with Sedgwick Claims Management Services' claims adjuster Karen Beam ("Beam"). Plaintiff told Beam that she was down-stocking nails and screws and her shoulder popped, and that nothing unusual caused the injury. Thereafter, defendants denied plaintiff's claim for workers' compensation because "there [was] no evidence to support an injury by accident[.]"
On 23 March 2015, plaintiff reported shoulder pain to her primary care physician, Dr. Thomas Rennard. Dr. Rennard's office notes indicate that plaintiff described her injury as occurring while she "was lifting boxes of nails and felt a pop, nearly dropped the box." Dr. Rennard subsequently testified that plaintiff described the injury as recorded in his notes, and it was his opinion that the pop seemed to occur before plaintiff dropped the box.
On 13 April 2015, plaintiff became a patient of Dr. Jay Jansen and Physician Assistant John Wood ("Wood"). Dr. Jansen testified that plaintiff explained that her injury occurred when "she was trying to reach some nails, felt a pain in her shoulder, and ended up dropping the nails." Dr. Jansen testified it was "plausible," "conceivable," or "possible" that the 11 February 2015 injury caused plaintiff's shoulder problems, but that there was "not necessarily" a causal relationship.
Plaintiff began physical therapy on 29 April 2015, reporting to physical therapist Michele Hobson that "she injured her shoulder 2/11/15 when she was moving a box of nails at work and it slipped and jerked her arm causing her shoulder to pop."
On 24 June 2015, Dr. Jansen performed arthroscopic surgery on plaintiff's right shoulder, consisting of biceps tenotomy, labral debridement, rotator cuff debridement and repair, subacromial decompressionacromioplasty, and distal clavicle excision. Subsequently, Dr. Jansen performed a second right shoulder surgery, consisting of an open revision right rotator cuff repair.
At the hearing, plaintiff explained that the injury occurred because "the box in question 'got crooked' in her hand and that to avoid dropping it, she had to shove it into the next shelf down." She "testified that she felt the pop and pain in her shoulder only after she started to lose control of the box and it jerked her arm." Based on this version of events, she argued it was the unusual occurrence of the box becoming "crooked" that caused her injury. However, the Commission:
place[d] greater weight on how Plaintiff described her injury in her February 16, 2015 written statement, how she described her injury to [Beam], and what the stipulated records indicate she said to [Muniz] and [Elkin] on February 16, 2015, Dr. Rennard on March 23, 2015, and Dr. Jansen and [Wood] on April 13, 2015. Based upon the foregoing, the [Commission] does not find credible the testimony and evidence which would suggest Plaintiff's shoulder injury occurred when the box of nails became crooked in her hand and she tried to maintain control and place the box of nails on the lower shelf.
Thus, the Commission concluded that "[p]laintiff did not sustain an injury by accident arising out of and in the course of her employment" because:
[t]he preponderance of the evidence in this matter demonstrates that the task of reaching overhead to down-stock a thirty-pound box of nails and screws is a normal part of Plaintiff's work routine, and that on February 11, 2015, Plaintiff simply reached overhead, lifted the box from the top shelf, and felt a pop and pain in her shoulder while lowering the box to place it on a lower shelf. The pop, or injury to her left shoulder, occurred while Plaintiff was performing her usual and customary duties in a normal fashion, with no interruption of the regular work routine or introduction of unusual conditions likely to result in unexpected consequences.
Accordingly, the Commission denied plaintiff's claim for workers' compensation benefits. Commissioner Christopher C. Loutit dissented. In his opinion, "plaintiff's normal work routine was interrupted by the unusual condition of losing control of the box after it became crooked, and redirecting it to the wrong location." Thus, Commissioner Loutit concluded that plaintiff proved that she sustained a compensable injury by accident to her right shoulder.
Plaintiff appeals.
II. Discussion
On appeal, plaintiff argues findings of fact numbers 10 and 11 are not supported by competent evidence. Specifically, she contends that the Commission erred in finding that she told Beam that nothing unusual happened on 11 February 2015 and her shoulder popped as she down-stocked nails, and that this conversation was not recorded. She also argues that the Commission's findings related to Dr. Rennard's testimony are contrary to his full testimony.
Additionally, plaintiff argues that the Commission erred by determining an accidental injury did not occur, and applied an incorrect legal standard in determining that plaintiff failed to prove that her alleged injury was causally related to the 11 February 2015 incident. We address each argument in turn.
"Our review of an opinion and award of the Industrial Commission 'is limited to consideration of whether competent evidence supports the Commission's findings of fact and whether the findings support the Commission's conclusions of law.' " Rose v. N.C. Dep't of Correction , 219 N.C. App. 380, 382, 727 S.E.2d 708, 710 (2012) (quoting Richardson v. Maxim Healthcare/Allegis Grp. , 362 N.C. 657, 660, 669 S.E.2d 582, 584 (2008) ). Unchallenged findings of fact are presumed binding on appeal, and, when the Commission's findings of fact are challenged, they "are conclusive on appeal if supported by competent evidence even" if "there is evidence to support a contrary finding." Jones v. Candler Mobile Vill. , 118 N.C. App. 719, 721, 457 S.E.2d 315, 317 (1995) (citation omitted). "We review the Commission's conclusions of law de novo , but this review is limited to whether the findings of fact support the Commission's conclusions of law." Starr v. Gaston Co. Bd. Of Educ. , 191 N.C. App. 301, 310, 663 S.E.2d 322, 328 (2008) (citation omitted).
A. Finding of Fact Number 10
The Commission found that:
On February 18, 2015, Karen Beam, the Sedgwick adjuster assigned to handle this claim, spoke to Plaintiff on the phone regarding the circumstances of her injury. [Beam] kept log notes regarding her conversation with Plaintiff but did not record the telephone call. Plaintiff told [Beam] that she was down-stocking nails and screws and her right shoulder popped. Plaintiff told [Beam] that nothing unusual happened to cause the injury. On February 19 and February 26, 2015, Defendant completed Forms 61, Denial of Workers' Compensation Claim , indicating that Plaintiff's claim was being denied because "there is no evidence to support an injury by accident ...." Plaintiff did not file a Form 18, Notice of Accident to Employer and Claim of Employee, Representative or Dependent , until July 30, 2015.
Plaintiff contends that the Commission erred by making finding of fact number 10 because her own testimony contradicts the finding. She testified that Beam told her their conversation was recorded, and that she told Beam that when she was downstocking, the box "got crooked[,]" she was going to drop it, and then she felt her shoulder pop. In contrast, finding of fact number 10 is consistent with Beam's testimony. Beam testified that she rarely records claimants' statements, and she did not do so here. She also testified that plaintiff reported that "[n]othing unusual happened" on 11 February 2015, and that plaintiff's shoulder popped as she down-stocked nails and screws. While plaintiff's testimony differs, "[t]he Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony." Anderson v. Lincoln Constr. Co. , 265 N.C. 431, 433-34, 144 S.E.2d 272, 274 (1965). Thus, it was within the Commission's discretion to make findings of fact in accordance with Beam's testimony instead of plaintiff's testimony. We conclude that this finding of fact was supported by competent evidence, and reject plaintiff's contention that it was made in error.
Plaintiff also argues that finding of fact number 10 is irrelevant because there was sufficient evidence that the misdirection of the box to the wrong shelf interrupted plaintiff's normal work routine, constituting an accidental injury. Because this argument is subsumed by plaintiff's contention that she met her burden of demonstrating that her injury was a compensable accidental injury, this aspect of her argument will be addressed by our consideration of plaintiff's third argument on appeal.
B. Finding of Fact Number 11
The Commission also found that:
Dr. Rennard went on to explain that it was the weight being held by Plaintiff in the position she was in that would create the injury, not the box slipping out of the hand, as that would release the stress on the shoulder. According to Dr. Rennard, "losing control isn't really the issue. The issue is that she had 30 pounds over head in a bad position that created a tear."
Plaintiff argues that this portion of finding of fact number 11 is not supported by competent evidence as it is contrary to the full testimony given by Dr. Rennard and ignores his statements about the "right" versus "wrong" positions to lift over the shoulder. We disagree. Dr. Rennard's testimony was consistent with the challenged finding of fact. He consistently testified that it was the weight being held by plaintiff in the position she was in that would create the injury, not the box slipping:
Q. And as far as the sequence of events and the timing, this would seem to indicate that the pop occurred before she dropped the box; is that correct?
[Dr. Rennard]. That's correct, and I actually would anticipate that as well. So in terms of the slippage that would happen, I would say that the injury would have occurred while the weight was still in her control.
....
[Dr. Rennard]. Because of, you know, again, that weight up in a position, that's going to create the injury. The box slipping out of the hand releases the stress on the shoulder and you no longer have an injury.
....
[Dr. Rennard]. So losing control isn't really the issue. The issue is that she had 30 pounds over head in a bad position that created a tear.
....
[Dr. Rennard]. The slippage is not the cause of the injury.
Based on Dr. Rennard's testimony, competent evidence supports finding of fact number 11 that it was the weight being held by plaintiff that would create the injury, not the box slipping out of her hands.
Plaintiff also argues that finding of fact number 11 ignored Dr. Rennard's statements about the "right" versus "wrong" positions to lift over the shoulder. At his deposition, Dr. Rennard explained the "right" versus "wrong" way to lift over the shoulder:
Q. In the wrong position, when you were testifying earlier and you had your arm up. So is the wrong position not a matter of doing this repetitively, or it's a matter of-what is that (indicating)?
[Dr. Rennard]. ... Well, you're doing .... All of a sudden this one is a little heavy, and it comes a little farther than you anticipate it, and all of a sudden it's here instead of here. You know, I've got it here, and I don't tear. I put it here, and my shoulder pops (indicating).
Q. So for the written record when you said, "Here it doesn't," that's more in front of you or in front of your face.
[Dr. Rennard]. Uh-huh.
Q. And when you say, "It comes further and my shoulder pops," that's when it's over your shoulder?
[Dr. Rennard]. With the shoulder can-again, it's an amazing joint that does incredible things, but it can't do everything. And so, you know, I mean, you go in the gym and I can lift a certain weight like this, and I can lift weight a certain weight like this, and I can lift less like this because of how those muscles change and interact (indicating). Again, 30 pounds in this position is manageable, but 30 pounds in this becomes unmanageable (indicating). Again, if it starts to drift or starts to and she tries to control it and correct it, then we have a mechanism of injury.
Although the Commission did not make findings of fact regarding the "right" versus "wrong" positions to lift over a shoulder, we fail to see how such a finding would defeat the relevant portion of finding of fact number 11, which is supported by competent evidence. Accordingly, we reject this argument. The Commission did not err by making finding of fact number 11.
C. Injury by Accident
Next, plaintiff argues that the Commission's determination that she did not experience a compensable accidental injury was erroneous because she met her burden to demonstrate that her injury was compensable under the North Carolina Workers' Compensation Act. We disagree.
"Under the North Carolina Workers' Compensation Act, an injury arising out of and in the course of employment is compensable only if that injury was caused by an 'accident,' which must be a separate event preceding and causing the injury." Porter v. Shelby Knit, Inc. , 46 N.C. App. 22, 24, 264 S.E.2d 360, 362 (1980) (citations omitted).
The elements of an "accident" are the interruption of the routine of work and the introduction thereby of unusual conditions likely to result in unexpected consequences. ... [I]f the employee is performing his regular duties in the "usual and customary manner," and is injured, there is no "accident" and the injury is not compensable.
Id. at 26, 264 S.E.2d at 363 (citation omitted).
Plaintiff relies on the dissenting commissioner's reasoning to argue that she proved a compensable injury. According to the dissent:
Under normal circumstances, plaintiff would move the boxes vertically onto the ladder, then down to the floor level. Due to the mishandling, plaintiff believed she was going to drop the box of nails. Rather than placing the box onto the ladder, then bringing it vertically down to the floor as originally intended, plaintiff was forced to shove the box horizontally into the shelf below the top shelf. Plaintiff neither desired nor intended for this horizontal movement resulting in the box being placed in this location. It was unusual to place the box in this location under the circumstances.
Therefore, the dissent argues, plaintiff established an interruption to the normal work routine because "sufficient record evidence, including plaintiff's first-hand testimonial account, demonstrates that plaintiff maintained some control over the box as it came down when she had to redirect it to the wrong shelf using an unusual exertion[.]" The Commission did not agree with the dissenting commissioner's weighing of the evidence. It determined that the injury occurred before plaintiff lost control of the box, finding plaintiff's hearing testimony was not credible.
Instead of accepting the version of events plaintiff gave at the hearing, the Commission found the version of events that plaintiff gave to medical providers prior to 29 April 2015 credible. For that reason, the Commission made findings of fact in accordance with how plaintiff described her injury: in her 16 February 2015 written statement and to Beam, to Muniz and Elkin on 16 February 2015, to Dr. Rennard on 23 March 2015, and to Dr. Jansen and Wood on 13 April 2015. Based on the findings of fact related to this evidence, the Commission concluded that the injury occurred as plaintiff performed her regular duty of down-stocking in the usual and customary manner, and, without any interruption of her work routine, she felt her shoulder pop, and the injury occurred. This view of the evidence was within the Commission's discretion, even though there is support in the record for plaintiff's position. See Sheehan v. Perry M. Alexander Const. Co. , 150 N.C. App. 506, 510, 563 S.E.2d 300, 303 (2002). We cannot overturn the Commission's findings about the plaintiff's credibility and reweigh the evidence on appeal because "[t]he Full Commission is the sole judge of the weight and credibility of the evidence." Id. at 510, 563 S.E.2d at 303 (citation and internal quotation marks omitted).
Therefore, we find no error in the Commission's conclusion that plaintiff did not suffer an injury by accident because there is competent evidence to support the finding that an accident did not proceed the injury. The Commission was warranted in concluding as a matter of law that plaintiff did not suffer an injury by accident.
D. Finding of Fact Number 18
Plaintiff argues finding of fact number 18 is erroneous because the Commission applied an incorrect legal standard to determine that, assuming arguendo plaintiff's injury occurred as she described, she failed to prove her right shoulder's condition was causally related to the alleged 11 February 2015 incident. We disagree.
" '[C]ould or might' testimony is insufficient to establish medical causation in a workers' compensation claim." Workman v. Rutherford Elec. Membership Corp. , 170 N.C. App. 481, 493, 613 S.E.2d 243, 251 (2005) (citation omitted).
[O]nly an expert can give competent opinion evidence as to the cause of the injury. However, when such expert opinion testimony is based merely upon speculation and conjecture, ... it is not sufficiently reliable to qualify as competent evidence on issues of medical causation. The evidence must be such as to take the case out of the realm of conjecture and remote possibility, that is, there must be sufficient competent evidence tending to show a proximate causal relation.
Id. at 493, 613 S.E.2d at 251 (quoting Holley v. ACTS, Inc., 357 N.C. 228, 232, 581 S.E.2d 750, 753 (2003) ).
The finding of fact at issue states:
Assuming, arguendo , that Plaintiff's right shoulder injury occurred in the manner she described at the hearing, the Full Commission finds that Plaintiff failed to prove that the right shoulder condition which required treatment and disabled her was causally related to the alleged February 11, 2015 injury by accident.
Plaintiff argues the Commission erred in making this finding of fact because Dr. Jansen provided testimony that was sufficient to establish causation. Dr. Jansen did testify that it was "conceivable" and "plausible" that the plaintiff's shoulder condition was aggravated by the mechanism of injury as described by plaintiff. However, he also testified:
Q.... Do you think that more likely than not that incident, within the confines of that question, aggravated or activated or accelerated the prior degenerative problems which [plaintiff] had?
....
[Dr. Jansen]. I think it's possible. I think it's possible.
Q. Do you think it's more likely than not or probably?
[Dr. Jansen]. I think it certainly could. I'm not sure I can tell-that sort of thing is not unreasonable to happen. And I think it's-I'm not sure if I can tell you a percentage of how certain I am that it could occur from that, but it definitely could have.
Q. So 55 percent, not a hundred percent, but a 55 or 60 percent chance?
[Dr. Jansen]. Yeah.
[Defense Counsel]: Objection to form.
[Dr. Jansen]. Yeah, I'll buy into that.
Q. Does that mean a "yes"?
[Dr. Jansen]. Yeah.
Defendants' counsel asked for clarification:
Q. Okay. All right. And Doctor, you were asked about this some previously, and I just wanted to be clear. Are you able to state to a reasonable degree of medical certainty whether this incident of February 11th, 2015 caused or exacerbated the pain and the problems [plaintiff] presented to you with with [sic ] regards to her right shoulder?
[Plaintiff's Counsel]. Objection to form.
[Dr. Jansen]. I guess I don't really-I don't-I don't know how to answer that. You know, it's-it's very-This whole pain thing is subjective, and I don't-I don't know that I can-I think it's certainly possible that her pain has stemmed out of this accident, and the degree of certainty to that, I think that's-I don't know.
Plaintiff's reliance on Dr. Jansen's testimony as sufficient to establish medical causation is misplaced. Dr. Jansen clarified that he could not state to a reasonable degree of medical certainty that the 11 February 2015 incident caused or exacerbated the pain and problems with plaintiff's right shoulder. While it was "certainly possible" that the pain stemmed out of the accident, he did not know "the degree of certainty to that[.]" Thus, the Commission did not err by finding that, even had the plaintiff's version of events been accepted by the Commission, she did not prove a causal relationship between her right shoulder condition and the alleged 11 February 2015 incident.
III. Conclusion
For the reasons discussed, we affirm the opinion and award of the Commission.
AFFIRMED.
Report per Rule 30(e).
Judges DILLON and DIETZ concur.