***********
Upon review of the competent evidence of record, with reference to the errors assigned, and considering the briefs and oral arguments of the parties, the Full Commission finds no good grounds to receive further evidence, or to rehear the parties or their representatives. Upon reconsideration of the evidence, the Full Commission modifies the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into at the hearing as:
 STIPULATIONS
1. The parties are properly before the North Carolina Industrial Commission, and the Commission has jurisdiction over the parties and of the subject matter of these proceedings.
2. An employment relationship existed between the parties at all times relevant to these proceedings.
3. Defendant-Carrier provided workers' compensation insurance coverage to Defendant-Employer at all times relevant to these proceedings.
4. Defendants admitted the compensability of Plaintiff's neck and chest injuries only.
5. Plaintiff's average weekly wage was $892.00.
6. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit One: Pre-Trial Agreement; *Page 3 
 b. Stipulated Exhibit Two: Plaintiff's medical records and North Carolina Industrial Commission forms and filings;
 c. Stipulated Exhibit Three: Photographs of medication cart dated September 26, 2008;
 d. Defendants' Exhibit Two: An unsigned and undated "Witness Statement" form for Bertha Lee Smith, CNA;
 e. Defendants' Exhibit Three: "Resident Incident Witness Statement" form signed by Bertha Lee Smith, CNA and dated February 4, 2008;
 f. Defendants' Exhibit Seven: "Medical Authorization for Treatment" form signed by Plaintiff and dated February 4, 2008, and "Workers' Compensation Policy and Procedure North Carolina Facilities" form signed by Plaintiff and dated February 4, 2008;
 g. Defendants' Exhibit 12: Additional medical records of Plaintiff;
 h. Defendants' Exhibit 13: Photograph of medication cart.
 *********** ISSUES
The issues to be determined are:
1. Whether Plaintiff's current complaints are due to her February 4, 2008 work injury?
2. Whether Plaintiff remains disabled?
3. Whether Plaintiff is entitled to any further workers' compensation benefits?
 ***********
Based upon the competent and credible evidence of record, the Full Commission makes the following: *Page 4 
 FINDINGS OF FACT
1. Plaintiff is 65 years old, having a date of birth of December 4, 1945. Plaintiff received her nursing license in 1969, and worked as a licensed practical nurse for Defendant-Employer for approximately 1.5 years prior to February 4, 2008. Plaintiff also worked at several other facilities as a licensed practical nurse before accepting employment with Defendant-Employer.
2. On the night of February 3, 2008 and the early morning hours of February 4, 2008, Plaintiff was working on the night shift. Shortly after 1:00 a.m. Ms. Bertha Lee Smith, a certified nursing assistant (CNA), noticed that the alarm light was on outside of a resident's door. When Ms. Smith responded, the resident appeared very agitated and demanded a hair cut. When Ms. Smith advised the resident that she could not cut his hair at that hour, he shoved his table across the room and started to swing at her. Ms. Smith dodged his swings and ran out of the resident's room.
3. After exiting the resident's room, Ms. Smith saw Plaintiff pushing a medication cart down the hallway and reported to her what had just occurred with the agitated resident. Plaintiff informed Ms. Smith that she would check on the resident after she finished "making her rounds."
4. Plaintiff subsequently went to the resident's room with Ms. Smith by her side. Ms. Smith waited just outside the doorway with Plaintiff's medication cart as Plaintiff walked inside to speak with the resident. The resident again began screaming and demanding a hair cut. Plaintiff retreated to the doorway and turned to face the resident, who had gotten up from a seated position on the bed and advanced toward her "with both fists like a boxer." The resident hit *Page 5 
Plaintiff several times in her chest area and on the left upper neck, knocking her backwards onto the medication cart which was parked just outside the doorway. Plaintiff's left hip and knee hit the medication cart. Ms. Smith helped to catch Plaintiff to keep her from falling to the floor.
5. Plaintiff immediately reported the incident to her supervisor, Ms. Melanie Doogan Strickland, who is also a licensed practical nurse. Ms. Strickland assisted Plaintiff in filling out a witness/incident report. Thereafter, Plaintiff sought treatment at the emergency department of the hospital where she gave a history of being struck by a resident in her chest area with both fists earlier that morning. Medical records from this visit indicate that Plaintiff denied any head injury, but did complain of chest and left shoulder/left neck pain. Plaintiff had contusions on her chest area. She received instructions to remain out of work and to see her primary care physician.
6. Defendants admitted the compensability of Plaintiff's February 4, 2008 work injury to her neck and chest on a Form 60. Defendants denied that Plaintiff sustained any type of head injury.
7. On February 5, 2008 and February 11, 2008, Plaintiff presented for follow-up care at Nash Urgent Care in Rocky Mount, North Carolina. Plaintiff complained of continuing neck and chest pain. She received prescriptions for medications and physical therapy, and instructions to return to light-duty work.
8. On February 27, 2008, Defendant-Employer made an effort to accommodate Plaintiff's light-duty restrictions by assigning her to work in the laundry room. Plaintiff worked in the laundry room for a short period of time and then sat down and began eating. Plaintiff testified that she attempted to work but was unable to continue due to headaches, dizziness, and severe pain. The Full Commission finds Plaintiff's testimony concerning her inability to perform the *Page 6 
light-duty laundry room job to be credible. Plaintiff did not unjustifiably refuse suitable employment on February 27, 2008.
9. On March 6, 2008, Plaintiff presented to Dr. Greig Vincent McAvoy, an orthopaedist, with complaints of continuing pain. Plaintiff reported to Dr. McAvoy that she was hit by a resident in the left upper chest and collarbone area, knocking her body out of the room and against a medication cart. Based upon his review of Plaintiff's medical records from the February 4, 2008 incident and his examination, Dr. McAvoy concluded that the work injury resulted in "very superficial injuries" which required no further active treatment. He further noted "magnification of symptoms."
10. Dr. McAvoy was of the opinion that Plaintiff was at maximum medical improvement as of March 6, 2008 and released her to return to full-duty work without restrictions. He advised Plaintiff that a return to work would be beneficial for her rehabilitation. The Full Commission gives little weight to the medical opinions of Dr. McAvoy.
11. On March 11, 2008, Plaintiff returned to work with Defendant-Employer. When she was assigned to work on two halls, Plaintiff advised her supervisor that she could not work on both halls, and that it was her understanding that she would only be responsible for working one hall when she returned to work. Plaintiff's supervisor instructed her to at least try working both halls. Plaintiff refused to take the keys to her medication cart and left the premises.
12. Defendants filed a Form 28T, Notice of Termination of Compensation by Reason of Trial Return to Work, terminating Plaintiff's temporary total disability compensation as of March 9, 2008 even though Plaintiff did not return to work on March 9th and did not actually work after she reported to work on March 11, 2008. *Page 7 
13. After leaving work on March 11, 2008, Plaintiff sought treatment on her own from Boice-Willis Clinic in Rocky Mount, North Carolina, where she saw Dr. Samuel M. Wesonga, a family medicine specialist. The Full Commission finds credible Plaintiff's testimony that Defendant-Employer's administrator advised her that her workers' compensation benefits were being terminated, and that Defendants were not going to pay for any further medical treatment.
14. Dr. Wesonga had not previously treated Plaintiff. She complained of left-sided neck and knee pain. Plaintiff gave a history of being knocked against a medication cart by a resident and suffering a "whiplash injury." She reported that she did not hit the floor and never had a head injury, or loss of consciousness. Dr. Wesonga's notes also reflect that Plaintiff had new complaints of headache and numbness involving the left side of her face and upper extremity and that she was seeing some "high spots in her left eye." He diagnosed Plaintiff with neck, left arm, and left knee pain, prescribed medication and wrote Plaintiff out of work.
15. Although not an authorized treating physician, the Full Commission finds that Dr. Wesonga's medical note taking Plaintiff out of work on March 11, 2008 satisfied Plaintiff's burden of proving continuing disability at that time. Therefore, despite Plaintiff's refusal to attempt to work on March 11, 2008, which was unjustified, she proved continuing disability on the same day when Dr. Wesonga wrote her out of work.
16. On March 12, 2008, Plaintiff went to her last authorized physical therapy session. Upon completion of physical therapy, Plaintiff felt dizzy and sick and later experienced stroke-like symptoms. Plaintiff was hospitalized from March 12th through March 14, 2008.
17. At the time of her admission to the hospital, Plaintiff complained of worsening neck and low back pain with some radicular symptoms. However, she was admitted to the hospital due to symptoms indicative of possible "cerebrovascular accident." Throughout her *Page 8 
hospital stay Plaintiff was tested and treated for symptoms related to her compensable injury and symptoms found to be unrelated to her injury. The history of onset of symptoms that Plaintiff gave at the hospital was consistent with what she reported to Dr. Wesonga.
18. While in the hospital, Plaintiff underwent imaging of her neck, brain, cervical spine and lumbar spine. The cervical spine MRI without contrast showed "spondylitic changes involving multiple levels of the cervical spine." The MR angiography of the brain without contrast showed "no sites of focal stenosis or vessel occlusion." The MR angiography of the neck was negative. The MRI of the left shoulder without contrast revealed an abnormal signal pattern within the rotator cuff consistent with tendinopathy/tendinitis. The MRI of the brain with and without contrast showed multiple periventricular white matter lesions suggestive of chronic atherosclerotic ischemic changes. The lumbar spine MRI showed some disc protrusion, dessication and compression of the thecal sac at L3-L4, L4-L5 and L5-S1. Plaintiff's final discharge diagnosis was cervical and lumbar radiculopathy and elevated blood pressure. Plaintiff's diagnostic findings, however, were not found to be typical of cerebrovascular accident.
19. On March 17, 2008, Plaintiff returned to Dr. Wesonga. He noted that a recent MRI of her head revealed small vessel changes in the brain which were chronic in nature. Dr. Wesonga instructed Plaintiff to follow up with the physician who treated her stroke-like symptoms, but did not address any work restrictions at that time.
20. On March 18, 2008, Plaintiff presented to Dr. Brian Thomas Szura, an orthopaedist at Cary Orthopaedic Sports Medicine, and reported continuing pain in her neck, left upper extremity, upper left chest, and left lower back, hip, and knee. Plaintiff also described a tingling sensation on the left side of her face which extended down to her shoulder, and at times to her arm. Dr. Szura performed a detailed physical examination, reviewed her recent March 14, 2008 *Page 9 
diagnostic test results from the hospital and diagnosed Plaintiff with cervical strain with a possible component of radiculopathy and lumbosacral strain with possible left lower extremity radiculopathy. He found no clinical evidence of primary left shoulder or knee derangement.
21. Dr. Szura released Plaintiff to return to work with restrictions that included no lifting/carrying of more than two to three pounds with the left upper extremity, no stooping, no climbing ladders, and no kneeling. Dr. Szura was not deposed.
22. The Full Commission gives great weight to the restrictions given by Dr. Szura, and finds as fact that Plaintiff was capable of performing work within the restrictions given by Dr. Szura as of March 18, 2008. Defendant-Employer offered Plaintiff employment within these restrictions, but she refused to return to work in any capacity. Plaintiff's refusal of Defendant-Employer's continuing offer of employment suitable to her restrictions following March 18, 2008 was unjustified.
23. On March 21, 2008, Plaintiff returned to Dr. William Ronald Deans, the neurologist who had treated her during her recent hospitalization for suspected stroke. Plaintiff complained of continuing cervical spine pain, headaches, sleep disturbance, spots before her eyes when she extended her neck and looked upward, and transient paresthesias on her left side, including her head, arm, and leg following her February 4, 2008 work injury. Dr. Deans diagnosed Plaintiff with cervical strain, cervico-genic headache disorder, and lumbar strain, which he related to her February 4, 2008 work injury. Dr. Deans was uncertain of the etiology of Plaintiff's transient paresthesias on her left side and could not find any corresponding abnormality to explain it on physical examination.
24. On May 20, 2008, Plaintiff presented to Dr. James Bryan Cooper, a neurologist. He diagnosed her with neck pain, cervical dystonia, stroke, depression, and traumatic brain injury. *Page 10 
Plaintiff continued to seek treatment from Dr. Cooper over the next several months. He referred her to ECU Physicians for a psychiatric assessment.
25. Dr. Cooper initially opined that Plaintiff's February 4, 2008 work injury caused cervical pain and dystonia, depression, PTSD, and traumatic brain injury, but later testified that he referred Plaintiff to a psychiatrist to help make a determination on whether she had PTSD and traumatic brain injury. Dr. Cooper was unable to relate Plaintiff's stroke-like symptoms to her February 4, 2008 work injury. The Full Commission finds as fact that Plaintiff's February 4, 2008 work injury did not cause or contribute to her stroke-like symptoms.
26. On July 1, 2008, Plaintiff presented to Dr. David Scott Helm, a psychiatry resident physician at East Carolina University in Greenville, North Carolina, for an evaluation to help determine if she suffered from depression and PTSD as a result of her injury at work. Dr. Helm diagnosed Plaintiff with depression and possible PTSD, and began treating her with anti-depressant medication. Over the next several months, Dr. Helm continued to see Plaintiff, and she responded well to the out-patient therapy and medication.
27. On May 11, 2009, Dr. Helm noted that Plaintiff's prognosis was good and that her depression "was in remission." Dr. Helm was of the opinion that Plaintiff did not have PTSD, but she had displayed some of the symptoms of PTSD.
28. On July 31, 2008, Plaintiff presented to Dr. Ivan Jose Suner, an ophthalmologist at Duke University Medical Center. Dr. Suner noted that Plaintiff had been experiencing a thin veil over the visual acuity in her left eye and new floaters following her February 4, 2008 work injury. Dr. Suner also noted that Plaintiff had a chronic horseshoe retinal tear in her left eye.
29. On September 9, 2008, Plaintiff presented to Dr. Peter Arthur Van Houton, an ophthalmologist, for a second opinion due to complaints of increasing floaters, flickering, and *Page 11 
cobwebs in her left eye over the last three months, as well as sensations of "heat waves" over the last two weeks. Dr. Van Houton diagnosed Plaintiff with the early stages of retinal detachment and was of the opinion that Plaintiff's condition was urgent due to the extremely high probability of total retinal detachment and visual loss. Dr. Van Houton performed a laser repair procedure on Plaintiff in his office that same day.
30. With respect to whether the condition for which he treated Plaintiff was causally related to her work injury, Dr. Van Houten was of the opinion that if Plaintiff's injury caused a sudden acceleration and deceleration of sufficient force, then this would be a scenario that would cause a retinal detachment. Dr. Van Houten agreed, however, that he did not have enough information from the history he took from Plaintiff in his office notes to determine whether she sustained sufficient acceleration and deceleration force to cause the retinal detachment that he treated. He could not put together a sufficient time line to determine when the retinal detachment occurred, since retinal detachments can happen over a long period of time, or progress rapidly depending on location. According to Dr. Van Houten, retinal detachments can be metabolic related, trauma related or spontaneous.
31. Although the Full Commission finds as fact that the agitated resident forcefully hit Plaintiff on the left side of her neck which could have produced the sudden acceleration and deceleration motions described by Dr. Van Houten and that Plaintiff referred to her injury in the history she gave to Dr. Wesonga and Dr. Deans as a "whiplash injury," the evidence is still insufficient to meet Plaintiff's burden of proving that her retinal detachment was causally related to her injury-related trauma. Also, the evidence does not establish that Plaintiff's other eye symptoms were causally related to her compensable injury. *Page 12 
32. On February 12, 2010, the Full Commission entered an Order directing Defendants to authorize and pay for the neuropsychological testing ordered by Dr. Cooper. Plaintiff has not undergone this testing and neither party appears to be pursuing such testing. The Full Commission therefore finds as fact that the evidence presented is insufficient to prove that Plaintiff sustained traumatic brain injury as a result of her work injury.
33. Pursuant to the February 12, 2010 Full Commission Order the parties deposed Dr. Helm. Dr. Helm was of the opinion and the Full Commission finds as fact that Plaintiff does not have PTSD or major depression.
34. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff's cervical strain, "cervio-genic headaches" diagnosed by Dr. Deans, shoulder pain, lumbar pain and left knee pain, all of which she reported to and received treatment from either Dr. Wesonga, Dr. Cooper, Dr. Deans and a number of other physicians, were causally related to her work related injury. As a result of her injuries and the resulting pain, Plaintiff has had problems with sleeping, memory, mood and some pain-related anxiety and depression symptoms. The Full Commission finds as fact that these symptoms flowed directly from and are causally related to her work related injury.
36. With respect to disability, the Full Commission finds as fact that Plaintiff has proven that as a result of her work related injury she was incapable of working from February 5, 2008 through March 18, 2008. Although Plaintiff refused employment that may have been suitable had she tried to work on March 11, 2008, Plaintiff's compensation should not be suspended as she was removed from work on the same day by Dr. Wesonga. Dr. Suzra, whose opinions the Full Commission has given great weight, released Plaintiff to return to work with restrictions on March 18, 2008. As of that date Plaintiff was capable of performing some work *Page 13 
within the restrictions given. Plaintiff has presented no evidence showing that she has looked for work within these restrictions, sought a return to work with Defendant-Employer who would have provided her work within the restrictions given, or that seeking suitable employment would have been futile.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On February 4, 2008, Plaintiff sustained an injury by accident arising out of and in the course of her employment with Defendant-Employer as a result of being forcefully struck by a resident in her chest and the left side of her neck. N.C. Gen. Stat. § 97-2(6).
2. Defendants admitted compensability of the injury to Plaintiff's neck and chest on a Form 60. Additionally, Plaintiff has proven that her left knee symptoms, shoulder pain, lumbar pain, and "cervio-genic headaches" were also causally related to her February 4, 2008 injury, through medical evidence and her own testimony. Workman v. RutherfordElec. Membership Corp., 170 N.C. App. 481, 613 S.E.2d 243 (2005). Plaintiff has further proven that she suffers from problems with sleeping, memory, mood and some pain-related anxiety and depression, which flowed directly from and are causally related to her work related injury. Starr v. Charlotte Paper Co.,8 N.C. App. 604, 175 S.E.2d 342 (1970).
3. Plaintiff has not proven that she has PTSD, major depression, or traumatic brain injury as a result of her compensable injury. Plaintiff has also failed to prove that her stroke-like symptoms, retinal detachment and other eye problems are causally related to her compensable injury. Holley v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d 750 (2003). *Page 14 
4. Pursuant to N.C. Gen. Stat. § 97-32, "if an injured employee refuses employment procured for him suitable to his capacity, he shall not be entitled to any compensation at any time during the continuance of such refusal, unless in the opinion of the Industrial Commission, such refusal is justified." N.C. Gen. Stat. § 97-32.
5. Plaintiff has proven that her refusal of the laundry room job was justified. Although Plaintiff's refusal to work on March 11, 2008 was unjustified at the time, Defendants are not entitled to a suspension of compensation at that time as a competent doctor removed her from work the same day, establishing continuing disability. N.C. Gen. Stat. § 97-32; Russell v. Lowes ProductionDistribution, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993).
6. As a result of her injury, Plaintiff has significant physical restrictions that would greatly limit her work capacity; however, she has been physically able to return some work since March 18, 2008. Defendant-Employer had work available within Plaintiff's restrictions but Plaintiff refused to return to work. Plaintiff's refusal to return to work on and after March 18, 2008 was unjustified. Since Plaintiff refused employment procured for her suitable to her capacity, she is not entitled to any compensation at any time during the continuance of such refusal. N.C. Gen. Stat. § 97-32. Plaintiff has not otherwise proven entitlement to continuing disability compensation. Plaintiff has not made reasonable efforts to find suitable employment elsewhere, she has not proven that it would be futile to seek suitable employment or that she is physically or mentally incapable of working. Therefore, despite her significant work restrictions, Plaintiff has not proven she has been incapable of working in any capacity after March 18, 2008.Russell v. Lowes Production Distribution,108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993).
7. Defendants are obligated to pay for all medical treatment, evaluations and diagnostic tests Plaintiff has received for her admittedly compensable neck or cervical related *Page 15 
conditions and chest, and also for Plaintiff's low back, shoulder, and left knee complaints related to her work injury. Defendants are further obligated to pay for treatment, evaluations and diagnostic tests for Plaintiff's injury-related "cervio-genic headaches," pain-related anxiety and depression and for her sleeping, memory and mood problems. Defendants are also obligated to pay for injury related treatment, tests and evaluations provided by Dr. Deans. Dr. Cooper, Dr. Szura, Dr. Wesonga and medical providers to which she was referred by Dr. Wesonga, as such treatment, evaluations and tests were reasonably required to effect a cure, provide relief or lessen her disability from her work related injury. Plaintiff continues to suffer from pain from her compensable injury and is in need of continuing medical treatment. N.C. Gen. Stat. §§ 97-25 and 97-25.1.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law the Full Commission enters the following:
 AWARD
1. Defendants shall pay to Plaintiff temporary total disability compensation from February 5, 2008 through March 18, 2008 at the rate of $594.69 per week. Defendants shall receive a credit for the compensation already paid to Plaintiff.
2. Defendants shall pay all medical expenses incurred and to be incurred by Plaintiff for her compensable injuries as set forth above, for so long as such treatment is reasonably required to effect a cure, provide relief or and/lesson her disability in accordance with procedures adopted by the Commission.
3. Defendants shall pay to Plaintiff's attorney 25% of the additional compensation due Plaintiff. *Page 16 
4. Plaintiff's right to compensation after March 18. 2008 is suspended.
5. Defendants shall pay the costs due the Commission.
This the ___ day of February 2011.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER